(Decided July 15th, 1859.)

---

# NEGROES WILLIAM and Others *vs.* EDWARD REYNOLDS.

A testatrix bequeathed to her niece her "servant, Lucinda, until she arrives to the age of twenty-seven, then Lucinda shall be *free to go to Africa* at the end of her term, and *carry with her* any *child* or *children* she may then have, under the age of *five years.*" HELD:

1st. That Lucinda *became free* when she reached the age of twenty-seven, and her children born *after that time* were free at their birth; the words, "to go to Africa" have no effect upon the question of her freedom.

2nd. But such of Lucinda's children as were *under* the age of five years, at the time she reached twenty-seven, are not entitled to their freedom, their mother *not having* removed to Africa.

A master may limit the time at which freedom is to commence, and it may be on a *contingent* event; if the event does not happen the negro remains a slave.

APPEAL from the Circuit Court for Calvert County.

*Petition for freedom* filed on the 5th of May 1856, by negro *Lucinda,* in behalf of herself and her seven children, *William, George, Juliet, John, Charles, Robert* and *Jane,* against the appellee. The petitioners claimed their freedom

under the following clause of the will of Betty Reynolds, executed on the 23rd of March, and admitted to probate on the 21st of April 1840:

"*Item.*—I give and bequeath unto my niece, Harriet Reynolds, all the rest and residue of my property, of every kind whatsoever, except my negroes, which I dispose of in the following manner:

"It is my will and desire, that my man Lewis, aged twenty-three years, and my man David, aged twenty years, be hired out by my brother, Joseph W. Reynolds, until they arrive at the age of twenty-seven years, then to be free to go to Africa, and the money arising from their hire to be paid to Foreign and Domestic Missions, except ten dollars to be paid to each of the above named servants, annually, out of their hire; and if the said Lewis and David refuse to go to Africa, at the time specified, then they shall serve my niece, Harriet Reynolds, until they do go, but whenever they, or either of them, desire or consent to go, after their term of servitude, they shall be at liberty to do so; and on the same terms and conditions I leave to my niece, Harriet Reynolds, my servant, Lucinda, until she arrives to the age of twenty-seven; Fanny to serve until she is twenty-five years, and Clarissa to serve until Fanny arrives to the age of twenty-five years, then Fanny, Clarissa and Lucinda shall be free to go to Africa at the end of their respective terms, and carry with them any child or children they may then have under the age of five years; all the children which they, or either of said female slaves, may have, over five years of age, at the time of their departure from the United States, for Africa, shall serve my niece, Harriet Reynolds, until the male children arrive at the age of twenty-one years, and the female children arrive at the age of eighteen years, and then, like their mothers, to be free to go to Africa, and their children also in like manner; and if all, or either of the above named negroes, should die in the United States, or refuse to go to Africa, nevertheless, all or any of their children, or descendants, are hereby made free to go to Africa, at any time they may please, with the above restrictions, that is, after serving an apprenticeship, as before stated, for all children over five years of age."

*1st Exception.* The petitioners offered in evidence the above will, and proved that the petitioner, Lucinda, is the negro mentioned therein, and further offered testimony tending to show, that she attained the age of twenty-seven in 1847. They further proved by Robert Grierson, a competent witness, that the other petitioners are the children of Lucinda, and that at the time of this trial (July 1858) William was about sixteen years old, Juliet from eleven to twelve, John from seven to eight, Charles about six, Robert from four to five, and Jane from three to four. The defendant then offered the following prayers:

1st. That the petitioners, Lucinda and her children, William, George, Charles, John, Robert, Juliet and Jane, are not entitled to their freedom under the will of Betty Reynolds, because the clause, under which they claim, is a permission to go to Africa, and not a bequest of freedom to them; and, also, because there is no evidence offered to the jury of the sufficiency of the estate of the said Betty Reynolds to pay its debts.

2nd. That the petitioners, William, George, Charles, John, Robert, Juliet and Jane, are not entitled to their freedom under this will, provided the jury believe, they are respectively of the ages proved by the witness, Grierson, and also believe the other testimony in the cause.

The court (BREWER, J.) refused the *first* prayer, and granted the *second*, to the granting of which the petitioners excepted.

*2nd Exception.* The petitioners then, upon the evidence contained in the first exception, made part of this, offered two prayers, the *first* of which, as the record states, the court granted, but it cannot be found. 2nd. If the jury believe from the evidence, that the petitioner, Lucinda, was the slave of Betty Reynolds, at the time of her death; that the said Betty executed the last will given in evidence, which was duly admitted to probate; that the other petitioners are the children of the said Lucinda, and that the said Lucinda was over the age of twenty-seven years, at the time of the filing of this petition, and shall believe the other evidence in the cause,

then, according to said will, such of the children of the said Lucinda, as the jury shall find were under five years of age, at the time the said Lucinda attained the age of twenty-seven years, (if they shall find that any of them were under five years of age at that time,) are entitled to their freedom.   This prayer the court refused, and to this ruling the petitioners excepted.

The verdict of the jury was in favor of Lucinda, and against the other petitioners, who appealed from the judgment thereon against them.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*A. B. Hagner,* for the appellants.

The ruling of the court below on the first prayer of the appellants and its refusal of the defendant's first prayer, was, that the devise in question was an absolute manumission of Lucinda ; notwithstanding she did not go to Africa.   The verdict was in her favor and no exception was reserved by the appellee.   This point is not now before the court, but the decision was in strict conformity with the cases of *Vansant vs. Roberts,* 3 *Md. Rep.,* 127, and *Spencer vs. Negro Dennis,* 8 *Gill,* 314.

The second prayer of the appellants is based upon the idea, that all the children of Lucinda, who were under five years of age when she attained the age of twenty-seven, are entitled to their freedom under the will.   The language of the particular paragraph is: "I leave to my niece Harriet my servant Lucinda, *until she arrives to the age of twenty-seven years* ※ ※ ※ ※ then Fanny, Clarissa and *Lucinda, shall be free to go to Africa* at the end of their respective terms, *and carry with them any child or children they may have under the age of five years.*"   It is difficult to conceive how these words can be construed otherwise, than as a manumission of the children described in the clause just quoted.   The mothers are to be free *to go to Africa at the end of their respective terms.*   This in fact means, that the mothers are to be free either *to stay here* or to go away as they may choose, and will be construed

as if the expression simply was: "shall be free at the end of their respective terms." And if we take so much of the clause as refers to Lucinda alone, and give its real meaning, it would read: "I leave my niece Harriet my servant Lucinda until she arrives at the age of twenty-seven years, and then to be free." What was the meaning of the testatrix in allowing the mothers "to carry with them such of their children as shall be under five years of age" at the time their freedom began? Can it be doubted that it was her intention to liberate all such children *at the time when their mothers should become free*? There are no particular words requisite in manumissions, and any expression will suffice which clearly shows the design upon the part of the master *to abandon all further claim upon the negro*. How could these children be carried to Africa unless they were *manumitted*? We contend, therefore, that according to the clear construction of the will the court erred in refusing the appellant's second prayer.

We also contend that the court erred in granting the second prayer of the appellee even if our construction of the will is erroneous, because all the petitioners, except William and George, were born after 1847, when Lucinda became free, and they are certainly free even if George and William are not.

*A. R. Solters* for the appellee.

The court below erred in refusing the first prayer of the appellee.

1st. Because there is in the will, under which the petition- ers claim their freedom, no grant of freedom. It is simply a permission to go to Africa. The words, "free to go to Africa," are as if the testatrix had said, "liberty or privilege to go to Africa." The petitioners were to remain slaves until they availed themselves of the privilege, which is *continuous*, and can be embraced by them at any time. In this view this case is totally different from those of *Spencer vs. Negro Dennis*, 8 *Gill*, 314, and *Tongue vs. Negroes Crissy et al.*, 7 *Md. Rep.*, 454. In these cases there is first, the express gift of freedom followed by a condition subsequent; but here there is no such

15    v. 14.

gift; the negroes are to remain slaves unless they choose to go to Africa, and this is not a condition subsequent.

2d. Because, the petitioners ought to have shown *affirmatively* that the estate of Betty Reynolds was sufficient to discharge the debts due from it, independent of the petitioners. Since the passage of the Act of 1715, ch. 44, all negroes are slaves, and the *onus probandi* is cast upon the negro who petitions for his freedom. 4 *H. & McH.*, 295, *Mahoney vs. Ashton.* Freedom is a legacy, and is subject to all the rules regulating the taking of legacies. The petitioners must establish every thing necessary to make them free. The grant of freedom in the will, (if there be such a grant,) is not alone sufficient. They should have shown a settlement of the estate, and a sufficiency of assets to discharge the debts without the necessity of resorting to these petitioners.

The court was right in refusing the second prayer of the petitioners, because there is really no provision made in the will for the freedom of the children mentioned in this prayer. Lucinda, when she should arrive at the age of twenty-seven, has the permission of the testatrix to go to Africa, and if she chooses to go to take with her such of her children as are under the age of five years. This is surely not a condition subsequent. Their going to Africa is made dependent upon her action. If she chooses to go she has the privilege of taking them with her, a privilege now *lost,* as the children are now all above the age of five years.

TUCK, J., delivered the opinion of this court.

The correctness of the ruling on the *first* of the defendant's prayers is not before us, as he did not appeal. We are confined to the points presented by the appeal of the children of Lucinda, against whom the defendant obtained a verdict and judgment; and these arise on the *second* prayer of the defendant, which the court granted, and on the *second* of the appellants, which was refused.

The defendant's second prayer, as granted, assumes that none of the petitioners, other than Lucinda, are entitled to freedom, no matter when born, whether before or after their

Negro William, *et al.*, *vs.* Reynolds.

mother became free. It is shown that some of them were born after 1847, when, as is alleged, Lucinda reached the age of twenty-seven. We have no doubt that Lucinda was free at that age, whatever her mistress may have intended; because, according to the established doctrine in this State, in reference to conditional bequests of freedom, the words, "to go to Africa," can have no effect on the question. By the terms of the will she became free at the age of twenty-seven. We cannot distinguish this case from that of *Spencer vs. Dennis*, 8 *Gill*, 314. See also, *Vansant vs. Roberts*, 3 *Md. Rep.*, 127. The consequence is that the children of Lucinda, if any, born after that time, were free at their birth, and that the second prayer of the defendant was too comprehensive in classing them with the others, as not entitled to freedom. According to Grierson's testimony, if believed by the jury, some of them were born after their mother became free. As an entire proposition, therefore, the prayer was erroneous, and should have been refused.

But we think there was nó error in refusing the second prayer of the petitioners, which asserts that such of Lucinda's children, as were under the age of five at the time she reached twenty-seven, are entitled to their freedom. It is a mistake to suppose that they became free when their mother's freedom commenced. Their state was made to depend on a contingency; the removal of the mother to Africa. It may have been so declared as an inducement to the mother to emigrate. If the expectation of freedom, as to these children, should be defeated, so is the wish of the testatrix, that her negroes should leave the State: each result is caused by the mother's remaining here. A master may limit the time at which freedom is to commence, and it may be on a contingent event. If the event does not happen, the negro remains a slave. 8 *Gill*, 321. *Act of* 1809, *ch.* 171. *Williams vs. Ash*, 1 *Howard's Rep.*, 1.

In the last case, where negroes were left to a person, with the proviso that they should be free, if carried out of the State of Maryland, or sold to any one, it was held that freedom attached on the removal or sale, but that if the legatee had died before either event, the negro would have remained a slave.

Here, the bequest is not of freedom to particular children, *in esse*, but to those to be born, who might answer a certain description at the happening of an event, uncertain as to time; and provision is made as to the *status* of some of these negroes, in the event of others dying in this country, or refusing to go to Africa. What the condition of these children is, in the present state of things, is not a question before us, and we pass no opinion upon it. But, it is by no means clear, that the testatrix intended they should be free, when their mother became so, whether they were carried away or remained in the country.

For the reasons assigned, the ruling of the court is reversed on the second prayer of the defendant, and affirmed on that of the petitioners.

*Judgment reversed and procedendo awarded.*

(Decided July 15th, 1859.)