( Decided Oct. 29th, 1861.)

---

# James T. N. Maddox, Excr. of Eleanor W. Turner *vs.* Negroes Price and others.

A testatrix, by her will, executed in 1837, bequeathed her negroes to her executor, in trust, to hire them out from year to year, until her debts and legacies were paid, and then she directed that her executor "may, if he wish to do so," take such of her negroes as "are willing to go to the State of Kentucky or elsewhere, where they shall be manumitted, it being my wish and intention to manumit all my negroes," except one, "when my just debts" and legacies shall have been paid and discharged "and if any of my negroes shall refuse to leave the State of Maryland—a condition of freedom required by our just laws—then" the executor "may sell such negro or negroes, allowing those sold the privilege of choosing masters, provided the person chosen will give a fair price for them." After the debts and legacies were paid, the executor called on the negroes to go out of the State, which they refused to do. Held:

That the removal of the negroes out of the State, by *their consent,* is a condition *precedent* to their manumission; they have capacity to make the election under the will before they have become free; such a choice is not inconsistent with a state of servitude.

Appeal from the Circuit Court for St. Mary's county.

*Petition for freedom,* filed on the 17th of June 1859, by the appellees against the appellant. The petitioners, twelve in number, claimed their freedom under the will of Eleanor W. Turner, executed on the 18th of November 1837, and

admitted to probate on the 7th of August 1838. The clauses of the will under which the petitioners claim, as well as the agreement of facts on which the case was tried, are fully stated in the opinion of this court.

*Exception.* The petitioners, upon all the evidence in the cause, asked two instructions to the jury, as follows:

1st. If the jury shall find the petitioners were slaves for life of Eleanor W. Turner, the testatrix, at the time of her death, and that all the debts and legacies of the said Eleanor have been paid and satisfied by the hire of said negroes, then the petitioners are entitled to their freedom under the will of said Eleanor, although the jury may find that the negroes have refused to leave the State of Maryland.

2nd. That upon all the aforegoing evidence, if the jury find these facts to be true, the petitioners are entitled to their freedom.

The court (ROBERT FORD, Special Judge,) granted these prayers, and to this ruling the defendant excepted, and the verdict being in favor of the petitioners, the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*A. B. Hagner* and *A. Randall*, for the appellant:

Only such of the negroes as *are willing* to leave the State, are to be permitted to avail themselves of the opportunity of obtaining their freedom. Such of them as agreed to leave, are to be taken as slaves to Kentucky or elsewhere out of the State, and *there manumitted* by the executor. The will also gives a discretion to the executor, whether he shall move at all in the matter. The words are, "he may, if *he wish to do so*," take "such of the negroes," &c. There is no evidence that such is his wish; on the contrary, he resists the petition. The proof also shows, that all the petitioners refused, and still refuse, to leave the State of Maryland. The intention of the testatrix is clearly expressed, that the negroes were not to be free in the State of Maryland. She takes oc-

casion to signify her approval of the provision of "our equitable laws," forbidding manumissions within the State; she expressly says that, they are not to be manumitted until they have agreed to leave and have left the State, and when *outside* of the State they are to be manumitted. She further says that, if "any of the negroes should refuse to leave the State" the executor may sell such negroes, allowing them to choose their masters, provided the persons selected shall give a fair price for them. All these provisions clearly show that their right to freedom was only to arise upon the performance of these conditions *precedent* none of which have been performed. No right to freedom can, therefore, accrue to them. The case of *Negro William vs. Reynolds*, 14 *Md. Rep.*, 115, decides that, a bequest that Lucinda shall be free *to go to Africa* at the end of her term, confers freedom upon her, although she refuses to go out of the State. But it also decides that the words, that she may *"carry with her* any child she may have under the age of five years," confer no right of freedom upon such children, because she did not go to Africa; "their state was to depend upon a contingency, the removal of the mother to Africa." The reasoning of the court in that case is applicable to and decisive of that now before the court. No right of freedom was to accrue until they were manumitted, and this the executor was only authorised to do after they had left the State. Refusing to leave they forfeit their right to freedom. In the case of *Spencer vs. Negro Dennis*, 8 *Gill*, 314, the negro is first manumitted, and the condition appended is a condition *subsequent*, which cannot defeat the previous bequest. But here the condition is clearly *precedent*, and if the event does not happen the negro remains a slave. Unless the conditions prescribed by the testatrix in this case are to be performed before the freedom is to take effect, it would seem impossible to frame any condition precedent, which the court will respect.

*Geo. C. Morgan* and *Thos. G. Pratt*, for the appellees:

The very question decided by the court below, that the negroes are free under the provisions of this will without

going to the State of Kentucky, as the will directs, has been similarly decided by this court in the cases of *Spencer vs. Dennis*, 8 *Gill*, 314; *Vansant vs. Roberts*, 3 *Md. Rep.*, 119; *Tongue vs. Negroes Crissy, et al.*, 7 *Md. Rep.*, 454, and *Williams vs. Reynolds*, 14 *Md. Rep.*, 109.

BARTOL, J., delivered the opinion of this court.

The appellees claim their freedom under the folllowing clause of the will of Mrs. Turner:

"*Item.*—I also give and bequeath to my nephew, James T. N. Maddox, the residue of my negroes in trust, which negroes he shall hire out from year to year, until my just debts are paid as well as certain legacies discharged and paid, as hereinafter made by me; then he, the said J. T. N. Maddox, may, if he wish to do so, take such of my negroes as are willing to go to the State of Kentucky, or elsewhere, where they shall be manumitted; it being my wish and intention, to manumit all my negroes except Josias, when my just debts shall have been paid, and the bequests made in this will are discharged and paid; and if any of my negroes shall refuse to leave the State of Maryland—a condition of freedom required by our equitable laws—then he, the said J. T. N. Maddox, may sell such negro or negroes, allowing those sold the privilege of choosing masters, provided the persons chosen will give a fair price for them."

At the trial before the jury the following agreement was filed: "We agree that the negroes mentioned in the petition for freedom, are of the negroes of the late E. W. Turner, that Josias Price, one of the petitioners, is not the Josias excluded by the will, that the executor of E. W. Turner, Dr. Thos. Maddox, called on said negroes after the debts and legacies were paid off, to go out of the State of Maryland; they have refused and still do refuse to leave the State of Maryland, and that said debts and legacies are paid."

The appellees' counsel contends, that by the true construction of the will, the petitioners became entitled to their freedom, when the debts and legacies were paid, notwithstanding they refused to leave the State; that going out of the State

was a condition subsequent to the bequest of freedom, and the failure to perform it, could not defeat the manumission under the will. In support of this view several cases have been cited, which, as we think this case is distinguishable from them, it is necessary for us to notice. In *Spencer vs. Negro Dennis*, 8 *Gill*, 314, the will set the negroes free at the age of thirty-eight years, "provided they leave the State of Maryland, (and do not return therein to reside,) in the course of thirty days after they arrive to the age of thirty-eight years, and should they return to reside in the State, the will directed that they should be slaves to the testator's heirs." The petitioner having reached the age of thirty-eight in 1845, went at large and acted as a free man till 1849; when he was taken by Spencer and claimed as a slave, he having remained in the State. The court held that by the will, Dennis became free at the age of thirty-eight, and freedom having once vested could not be divested, and a state of slavery be again produced, by any condition prescribed by the testator. (See 8 *Gill*, 321.) In that case the condition prescribed was declared to be a condition subsequent.

The cases of *Vansant vs. Roberts*, 3 *Md. Rep.*, 119, and *Negro William vs. Reynolds*, 14 *Md. Rep.*, 114, were decided in conformity with *Spencer vs. Dennis*. In each of those cases, freedom was conferred by the will; and the condition annexed was to be performed after the right to freedom became vested; but in the case before us the petitioners are not manumitted by the will, they are bequeathed to J. T. N. Maddox in trust, with directions that he hire them out from year to year, till the debts and legacies of the testatrix shall be paid; then the will does not in terms set the negroes free; but declares that J. T. N. Maddox, (who is the executor,) "*may, if he wish to do so, take such of the negroes as are willing to go, to the State of Kentucky or elsewhere, where they shall be manumitted.*"

The testatrix declares her wish and intention to manumit all her negroes when her debts and legacies shall be paid; but this must be construed in connection with the other parts of the will, and clearly means that they are to be manumitted by

the executor, in the manner directed, not in the State of Maryland, but when they shall be removed from the State. The intention of the testatrix was not to confer freedom on the negroes by her will, within the State of Maryland; but they were to take freedom from J. T. N. Maddox, to whom they were first given, and then only in the event of their being willing to go out of the State, and this intention is clearly manifest from the subsequent part of the clause. This will, like all others, must be construed so as effect the intentioe of the testatrix, so far as that can be done consistently with the rules of law; and according to our construction of it, the testatrix clearly intended that the removal of the negroes out of the State, by their consent, should be a condition precedent to their manumission. There is no more difficulty in making a bequest of freedom depend upon a condition precedent, than there is in prescribing conditions precedent to the vesting of any other right. In the case of *Negro Williams and others, vs. Reynolds,* already cited, the will bequeathed Lucinda "until she arrived to the age of twenty-seven years, then Lucinda shall be free to go to Africa, at the end of her term, and carry with her any child she may then have, under the age of five years."

It was held that Lucinda became free at the age of twenty-seven years, although she did not go to Africa. But such of Lucinda's children as were under the age of five years, at the time she reached twenty-seven, were decided not to be free, their mother not having carried them to Africa. We said that "a master may limit the time at which freedom is to commence, and it may be on a contingent event; if the event does not happen, the negro remains a slave." 14 *Md. Rep.,* 115.

In our opinion, that principle is applicable to the case before us; the petitioners do not become entitled to freedom unless they are removed out of the State of Maryland. Requiring that they should consent to go out of the State by no means implies that they are to be free, whether they are willing to go or not. They are sentient, rational beings, and have capacity to make the election, under the will, before

they have become free; such a choice is not inconsistent with a state of servitude. On the contrary, by the provisions of the Act of 1831, ch. 281, sec. 4, the privilege is accorded to a manumitted slave to renounce freedom and to continue a slave. In the will before us, the testatrix referred to that law with approbation, and plainly intended to give to the petitioners a similar choice.

It follows from what we have said, that the judgment of the circuit court must be reversed without a *procedendo.*

*Judgment reversed.*

(Decided Oct. 29th, 1861.)