## JOS. A. BLUNDON ET AL., BOARD OF ROAD COMMISSIONERS, ETC., *vs.* HORACE CROSIER ET AL.

*No Final Decree Should be Passed on Motion to Dissolve an Injunction—Power of Road Commissioners of Prince George's County to Select Certain Roads for Improvement Under the Act of 1900, ch. 346.*

When a cause is set down for hearing on motion to dissolve a preliminary injunction it is error to pass a final decree upon such hearing.

The Act of 1900, ch. 346, created a Board of County Road Commissioners for Prince George's County invested with general control over all the public roads. The Board was authorized to use a certain fund "in the construction of permanent highways, beginning at the line of the District of Columbia and at the end of some highway therein, and building out into the county upon existing public roads." The Board appropriated the said sum to the improvement of two of the principal roads, beginning at the line of the district. Plaintiffs filed a bill to restrain this appropriation, alleging that the fund should be applied to the improvement equally of all of the roads leading from the district, denying the right of the Board to select certain roads for improvement, and alleging that two of its members were interested in property through which the selected roads ran. Defendants answered denying the allegation of bad faith and setting forth that they had exercised their discretion to select roads for improvement by the selection of the two most important and travelled roads in the county connecting with highways in the District of Columbia. *Held,*

1st. That under the Act the Board had the power to select for improvement certain roads from the whole number connecting with the district and was not required to apportion the fund equally to the improvement of all such connecting roads.

2nd. That the Court will not interfere with the exercise in good faith of the discretion vested in the Board.

3rd. That the answer of the defendants as to their *bona fides* being responsive to the allegations of the bill, it is evidence for the defendants upon motion to dissolve and the injunction granted should be dissolved.

Appeal from a decree of the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Charles Earl* (with whom was *F. Snowden Hill* on the brief), for the appellants.

*William A. Meloy*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

The General Assembly of Maryland, by chapter 346 of the Acts of 1900, created a Board of County Road Commissioners for Prince George's County, and gave to it the general supervision and control of all public roads and bridges. The Clerk of the Circuit Court is directed to pay to said Road Commissioners all money received by him for liquor licenses in said county, to be used by them "in the construction of permanent highways, beginning at the line of the District of Columbia, and the end of some highway therein, and building out into the county upon existing public roads." At the time of the institution of this suit, there was a sum of about six thousand dollars available for the above purposes, which sum the Road Commissioners appropriated to the permanent improvement of two of the principal roads, selected by them out of the whole number of public roads beginning at the line of the District of Columbia and at the end of some highway therein, and running thence into the county; and this case arose upon a bill filed against said Road Commissioners by the appellees, citizens and taxpayers of Prince George's County, to restrain the application of the whole of said fund to said two roads, or of any greater part of said sum than a due proportion thereof, according to the whole number of all such roads.

The defendants answered the bill, alleging that there are fifteen existing public roads in said county, beginning at the line of the District of Columbia at the end of some highway therein, and averring that by said Act of Assembly they were vested with discretion to select any of these roads for permanent improvement, and that they had exercised such discretion in good faith by the selection of the two most important and most travelled roads in the county, connecting with exist-

ing highways in the District of Columbia.   Upon the filing of this answer, defendants moved for a dissolution of the preliminary injunction which had been granted, and the Circuit Court ordered, "that the said motion stand for hearing on the 24th of October, 1900." This motion having been argued, the Court on November 13th, 1900, decreed that the preliminary injunction be made permanent, and that the defendants be finally enjoined from expending any more of the license fund upon said selected roads until an equal sum should have been expended upon each of the other existing public roads of said county, connecting at the district line with some highway therein ; and from that order this appeal was taken.

Where a cause stands for hearing on motion to dissolve, the only question submitted is the propriety of dissolving the injunction.   This was the question here submitted by *the proceedings*, though it would appear from the opinion of the Court, that the arguments made, treated the case as if submitted for final decree, upon the construction of the Act of Assembly.   But the appeal is taken, not from the opinion, but from the decree of the Court.   "The judgment, or decree, is the fiat or sentence of the law determining the matter in controversy."   *State use of Bruner* v. *Ramsburg*, 43 Md. 333. "The decree, and not the opinion, is the instrument through which the Court acts."   *Martin* v. *Evans*, 85 Md. 14.

To have justified a final decree, the case should have set down for final hearing.   *Dorsey* v. *Hagerstown Bank*, 17 Md. 413; *Paul* v. *Nixon*, note R, to *Jones* v. *McGill*, 1 Bland, 200.

In *Huston* v. *Ditto*, 20 Md. 332, a bill was filed by the appellees to restrain proceedings at law.   The cause was heard on motion to dissolve, and the Court overruled the motion, and decreed that the appellee should proceed to collect the amount claimed to be due.   On appeal to this Court, it was said, " The cause having been heard upon motion to dissolve, and not upon final hearing, it was error in the Court to proceed to pass a final decree ; the most which the appellees could have asked under such circumstances, if they had succeeded in maintaining their motion, would have been a continuance of the injunction until final hearing."

It is therefore plain that the decree in this case must be reversed, but as the Court below has in the opinion delivered, gone into the construction of the law as upon final hearing, and it is a matter of some importance that there should be no unnecessary delay in the improvement of the roads contemplated by the Act, we shall express our views upon the questions involved.

Treating the case, then, as an appeal from final decree regularly passed, two questions would be raised by the bill and answer:

First, whether it is within the power and discretion of the Road Commissioners, to select for permanent improvement by the application of the fund in question, certain roads from the whole number connecting with existing roads at the District line, or, whether they are required to apportion the fund equally, to the permanent improvement of all such roads; and, second, if they have such discretion, whether it has been fairly and honestly exercised by them.

The first question depends upon the true construction of the Act of Assembly in question, and of this, we think, there can be little doubt, "There are many public officers whose duties lie wholly outside of the domain of Courts of justice, who are required for the benefit of the public, or of individuals, to exercise powers nearly akin to those of Judges of Courts." *Mechem on Public Officers*, sec. 636; *Bishop on Non Contract Law*, secs. 785–786.

" To the *quasi* judicial class belong all the duties of highway commissioners, connected with the opening, discontinuing, and general management of highways, since they involve the exercise of judgment and discretion." *Throop on Public Officers*, sec. 736.

By sec. 1, of Art. 25 of the Code of Public General Laws of Maryland, the County Commissioners of each county are given " charge of and control over county roads and bridges," and by sec. 2 of the same Article, they are authorized to "make such rules and regulations for repairing, cleaning, mending and perfecting the same, and providing for the payment of the cost

of the same, as they may deem necessary," and it cannot be doubted that under these provisions, the County Commissioners have discretion to determine which of all the public roads at any given time, need repairing, cleaning, mending, or perfecting, and the amount so to be expended upon each or any one of said roads. If therefore the Act of 1900, ch. 346, in dedicating this particular fund to the construction of permanent highways, in the language of that Act, had directed the County Commissioners to make the application, we could perceive no reason why they should not be held to have the same discretion in the application and apportionment of that fund, to the construction of permanent highways as of any other funds at their disposal for the construction or improvement of highways generally.

The Act of 1900, in express terms gives to the Road Commissioners of Prince George's County "the general supervision and control of all public roads and bridges, and the building and repairs of the same." It not only repealed in general terms all laws inconsistent with that Act, but it expressly repealed secs. 1 and 2 of Art. 25 of the Public General Laws above mentioned, and also secs. 13, 19, 20, 21, 22, 23 and 24 of the same Article, so far as they might affect Prince George's County, these being the only sections which related to the power of County Commissioners over public roads and bridges. The obvious purpose of that Act, was to transfer to the Board of Road Commissioners of Prince George's County created by it most, if not all the power and authority over roads and bridges in that county, which under the sections of the Public General Laws thereby repealed, had been previously vested in the County Commissioners; and the same discretion possessed by them, must be understood to have passed, with the transfer of power and control, to the Road Commissioners, unless there is something in the Act effecting the transfer, to restrict its operation and effect. Sec. 286 of the Act of 1900, *requires* the County Commissioners annually to levy upon the assessable property, a tax of not less than twenty cents on the hundred dollars for the repairs and con

struction of public roads and bridges, to be paid to the order
of the Road Commissioners ; and it gives the County Com-
missioners *power* to levy such additional sum as they may
think needful, for the building of new bridges, the opening of
new roads, and the repairs and construction of highways and
bridges, to be paid over to the Road Commissioners, *to be dis-*
*bursed by them under the terms of the appropriation.*　It thus
appears that as to the peremptory annual levy of twenty cents
the discretion of the Road Commissioners is absolute, while
they are required to disburse the contingent levy "under the
terms of the appropriation by the County Commissioners."
Sec. 286 then proceeds to direct the clerk to pay over to
the Road Commissioners the money received from liquor
licenses, to be used as thereafter directed, and it will be ob-
served that this fund is not raised by levy, and is in no way
subject to any action by the County Commissioners. Sec. 289
directs the Road Commissioners to apportion three-fourths of
the *annual levy* for roads and bridges "among the road dis-
tricts, in such proportion as it may think right, regard being
had to the extent and condition of the roads of each district,
and the size of the fund available ; the remaining one-fourth
being directed to be used for the legitimate expenses of the
Road Commissioners, and for the benefit of incorporated towns
in the county, in the manner prescribed in the Act.　Here, as
to the three-fourths of the annual levy, there is absolute dis-
cretion.　Sec. 288 which has been heretofore quoted, is man-
datory in two respects, and in two only ; first, that the fund
referred to shall be used only for the construction of perma-
nent highways, and for such only as connect at the district
line with some highway therein ; and second, that the execu-
tion of the work shall be under the direction of the Geologi-
cal Survey Commission Division of Highways of the State of
Maryland, if there be such commission in existence.　As to
all else, the discretion of the Road Commissioners indicated
throughout the Act, is unrestricted, either by express words
or by implication.　The language of the Act is not, "begin-
ning on the line of the District of Columbia at the end of *each*

highway therein," but, "at the end of *some* highway therein."
To construe this Act as if it read—"Beginning on each and
every highway leading out of the District of Columbia, with
a view to continuing such construction with equal proportional
expenditure upon each and every of said highways," as
claimed by the appellees, would not only be a bald reconstruc-
tion of the Act, but would operate to reduce its beneficial re-
sults to the minimum.   At each divergence of the highways
after leaving the district line, no matter how numerous or how
unimportant these diverging roads, a new sub-division of the
fund would be required, without perceptible benefit to the cit-
izens of any portion of the county.   Such a result would in-
evitably follow such a construction of the Act, and we cannot
attribute such purpose to the law-making body, in any view
of the language it has used ; nor do we hesitate to hold that
the Road Commissioners have clear discretion to select the
highways for permanent improvement under the terms of this
Act.   The character of their office, and the nature of their
duties, requires that they should be vested with the discretion
given them in the general supervision and control of the pub-
lic roads, and the purposes for which they are directed to use
this special fund are declared in terms which are inconsistent
with the purpose to take away or restrict this discretion in
the selection of highways embraced in the class designated
for improvement.   If they should be required to apportion
this fund as claimed by the appellees, it would every year be
frittered away without attaining any of the beneficial results
contemplated by the Act.

When such discretion exists, as we have said exists here,
the rule with respect to granting an injunction, is, that the
Court will not interfere to restrain, control, or review the exer-
cise of power by the person in whom the law has vested the
discretion or judgment to exercise the same, unless the exer-
cise of the power is tainted with fraud, or it is necessary to do
so in order to prevent abuse, injustice, or violation of trust.
*Throop on Public Officers*, sec. 849.   As was said by this Court in
*Wiley* v. *Board of School Commissioners of Allegany County*,

51 Md. 404, "So long as public functionaries confine them-selves within the limits of the power delegated, the Court will not interfere within the exercise of their discretionary powers, or undertake to determine the question whether the act com-plained of be wise or unwise, good or bad.　Where the Legis-lature has confided the power of determining as to the wisdom and expediency of an act authorized to be done, to a board of public functionaries, with them the decision of the question must rest."　And that is the case here.　"But if there be an attempt to apply the funds to objects not embraced within the power granted, or to objects within the power, but in total dis-regard of essential conditions prescribed by the statute to make it lawful to appropriate the funds, a Court of equity will in-terfere to restrain such action."　Such however is not the case here.

The remaining question, whether the discretion conferred has been honestly and fairly exercised, may be briefly dis-posed of.

The bill contains no charge of fraud.　Its gravamen is that the Board assumed a discretionary power not conferred, and there is an insinuation that the discretion claimed was exer-cised with improper motives, and for the benefit of the two members by whose votes alone, it is charged the selection was made, viz., Blundon and Pyles; one of the roads selected being the Hyattsville road leading through certain suburban real estate in which Blundon is interested, and the other being the T. B. road, leading through the section nearest to the real estate and residence of Pyles.

The joint and several answer of all three members of the Board admits their ownership of land on or near the roads named, but denies the insinuation of bad faith or interested motives, and avers that these roads were selected by the unani-mous vote of the three members, with the advice and consent of the Geological Survey Commission "as being by all odds the two most important and most travelled roads in the county;" that their selection was in no wise influenced by the fact that two of the Board chanced to be real estate owners on

or near these roads, but that they were selected in the discharge of the duty imposed by the Act to exercise their best judgment and discretion in the public interest.

This answer is responsive to all the allegations of the bill, and is such case, on motion to dissolve, the answer is evidence for defendants, and the equity of the bill being denied under oath by responsive averments, the injunction should be dissolved. *Dorsey* v. *Hagerstown Bank,* 17 Md. 408; *Johnson Co.* v. *Henderson,* 83 Md. 125.

As was said in *Phila. Trust Co.* v. *Scott,* 45 Md. 451, "cases may occur in which a Court of equity, in the exercise of its discretion, and to promote the ends of justice, will continue the injunction although the answer may deny the equities of the bill;" but we say here, as was said there, "we find nothing to warrant the extraordinary exercise of this power by the Court," and we may add, nothing to impeach in the slightest degree the integrity and fairness of the appellants in the discharge of their duty.

It follows from the views we have expressed that the decree below must be reversed.

*Decree reversed with costs to appellant*
*above and below.*

(Decided May 2nd, 1901.)