MASSON *v.* REINDOLLAR, ET AL., COMM'RS.

[No. 105, October Term, 1949.]

684

*Decided* Per Curiam *October 14, 1949.*

*Opinion filed November 11, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MAR-KELL, JJ.

*Edgar A. Poe, Jr.* for the appellant.

*Hall Hammond, Attorney General,* and *Joseph D. Buscher, Assistant Attorney General,* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for injunction was brought by Charles A. Masson, a citizen and taxpayer of the City of Baltimore, to restrain the members of the State Roads Commission from awarding any contracts for construction of a bridge across the Chesapeake Bay until the cost of constructing a tunnel can be determined by bids, and to order the Commission to advertise for bids for construction of a tunnel.

The bill of complaint alleges that the Commission, after employing J. E. Greiner Company as consulting engineers on the bridge construction, employed Palmer & Baker and Ole Singstad, subaqueous vehicular tunnel engineers at a cost of $100,000 to report on the cost of constructing a tunnel. The consulting engineers estimated that a bridge could be built for $26,687,000, not including contingencies. The tunnel engineers estimated that the cost of a tunnel would be $34,097,000, and added contingencies in the sum of $2,903,000, thus raising the total to $37,000,000. The consulting engineers, after examining the estimate of the tunnel engineers, added contingencies in the amount of $2,727,000, making the total cost $39,727,000. At a hearing before the Commission in August, 1948, the tunnel engineers protested that, in view of their wide experience as subaqueous tunnel contractors and the very limited experience of Greiner Company in tunnel construction, the addition of $2,727,000 for contingencies was unwarranted. The bill then alleges that the Commission, upon the recommendation of the State Highway Advisory Council, appointed by the Governor of Maryland to assist and advise the Commission on the Chesapeake Bay project, decided to construct a bridge, but was influenced in making the decision by the fact that Greiner Company estimated that the cost of a bridge, not including contingencies, would be $7,410,000 less than the cost of a tunnel, not including contingencies.

The bill then alleges that it is apparent from bids, which have been received by the Commission, that the

bridge cannot be built for $26,687,000, as estimated by Greiner Company, but that it would cost $34,000,000, not including contingencies for overages caused by mistakes in the estimates of quantities of materials, and there would be the further cost of $3,000,000 for four islands in the Bay, a toll house and a lighting system. The bill alleges that since there is no evidence that the construction of a tunnel would exceed $34,097,000, not including contingencies, and since the estimate was made by tunnel engineers of wide experience, the Commission ought to ask for bids on a tunnel as well as a bridge. It is also alleged that the tunnel engineers estimated that the operating costs of a tunnel would be $220,000 a year, and Greiner Company arbitrarily raised this figure to $286,000 without any explanation.

The bill further alleges that, while the estimate of the cost of a tunnel was made by engineers of outstanding ability, it is obvious that the estimate of the consulting engineers, upon which the Commission relied, was not reliable, and the contemplated bridge will actually cost several million dollars more than a tunnel. The bill alleges that the Commission acted upon false and misleading data, and while great weight should be given to the comparative cost of each type of crossing, the Commission and the Governor have refused to advertise for bids for the construction of a tunnel, and have announced that contracts for the construction of a bridge will be awarded September 2, 1949. The bill charges that the Commission is preparing to expend large sums of money which will waste the funds from the sale of the Chesapeake Bay Bridge Bonds, and the decision to build a bridge without getting bids on the cost of constructing a tunnel is arbitrary and unlawful.

The members of the Commission demurred to the bill, and the chancellor sustained their demurrer without leave to amend. From that decree, which has the effect of dismissing the bill, complainant appealed to this Court.

It has long been recognized that a taxpayer may invoke the aid of a court of equity to restrain the action of a

municipal corporation or an administrative agency when such action is *ultra vires* or illegal and may injuriously affect the taxpayer's rights and property. *St. Mary's Industrial School for Boys v. Brown,* 45 Md. 310, 326; *Kelly v. City of Baltimore,* 53 Md. 134, 139; *Williams v. City of Baltimore,* 128 Md. 140, 158, 97 A. 140; *Baltimore Retail Liquor Package Stores Ass'n v. Kerngood,* 171 Md. 426, 189 A. 209, 109 A. L. R. 1253; *Matthaei v. Housing Authority of Baltimore City,* 177 Md. 506, 510, 9 A. 2d 835; *Castle Farms Dairy Stores v. Lexington Market Authority,* 193 Md. 472, 67 A. 2d 490, 493. Complainant, in his capacity as a taxpayer, was entitled to enter suit against the State Roads Commission to restrain any unlawful project which might cause him injury.

From the beginning of the modern system of State road construction and maintenance, the policy of the State has been to establish and maintain an adequate system of highways adapted to modern methods of transportation, so as to afford every section of the State safe, adequate and convenient facilities of communication with every other section of the State. To carry out that policy the Legislature in 1908 created the State Roads Commission as an administrative agency with full powers to select, construct, improve and maintain a general system of improved State roads. Laws of 1908, ch. 141. As a necessary incident of the authority to determine the location of roads to be incorporated in the general system, the Commission has the power of selecting those routes which in their judgment will best serve the public interest. The nature of the duties of the members of the Commission requires that they should be vested with the discretion given them in the general maintenance and supervision of the roads and bridges of the State.

It is a well established principle that where the action of an administrative agency is within the scope of its delegated authority, and does not affect the vested rights of liberty or property, the Court will not review its exercise of discretion unless its power was fraudulently or corruptly used. *Wiley v. Board of School Com'rs*

*of Allegany County,* 51 Md. 401; *Blundon v. Crosier,* 93 Md. 355, 361, 49 A. 1; *Murphy v. State Roads Commission,* 159 Md. 7, 14, 149 A. 566. Of course, a court of equity, upon the suit of a taxpayer, will restrain an administrative agency from entering into or performing an *ultra vires* or invalid contract. It is also accepted that an administrative agency required by statute to take certain action may be compelled by *mandamus* to exercise such power, though its honest discretion cannot be controlled. *Manger v. Board of State Medical Examiners,* 90 Md. 659, 45 A. 891. But we specifically hold that the Court will not control or review the exercise of the discretionary power of the State Roads Commission, unless such exercise is fraudulent or such abuse of discretion as to amount to a breach of trust. Any other rule would have the effect of substituting the decisions of the courts for the discretion reposed in the Commission, and would disrupt the policies of the Commission, taking out of the hands of a single State agency the administration of their important functions and placing them in the hands of the courts.

The bill of complaint in this case does not contain any allegation of fraud on the part of the State Roads Commission. We further find that the bill does not charge any corrupt action or any such flagrant abuse of discretion as to amount to breach of official trust. It is common knowledge that the proposal to construct a bridge across the Chesapeake Bay has been advocated in this State for many years. In 1947 the Legislature authorized the Commission to construct and operate bridges over and tunnels under navigable waters which are wholly or partly within the State, and to issue bonds payable solely from revenues for the purpose of paying the cost of any such project. Laws of 1947, ch. 561, Laws of 1947, Sp. Sess., ch. 41, Code Supp. 1947, art. 89B, secs. 122A-122U. Thus the Legislature conferred plenary power upon the Commission to determine what type of crossing should be constructed across the Chesapeake Bay. In the exercise of the discretion conferred

upon it by the Legislature, the Commission, after employing consulting engineers experienced in the construction of bridges, employed tunnel engineers to make an estimate of the cost of a tunnel. After the tunnel engineers submitted their report, the Commission asked its consulting engineers to give their advice, and they recommended a bridge. Public hearings were held by the Commission to discuss the recommendations of the consulting engineers, and the Commission finally decided to build a bridge. The Chesapeake Bay Bridge Bonds in the amount of $37,500,000 were sold in October, 1948, and the Commission pledged the tolls from the proposed bridge as well as the tolls from two existing bridges for the payment of the bonds. The State agreed in the convenant with the bondholders to build a bridge unless two-thirds of the bondholders should agree to a change. In March, 1949, when the bids were received, it became evident that the bridge would cost about $8,000,000 more than expected. However, the indenture provides that additional bonds may be issued in the event that the cost of construction is greater than expected. The Attorney General has suggested that the cost of a tunnel, like that of a bridge, would probably be greater than originally expected. However that may be, the State Roads Commission is the agency vested with discretion to determine whether to construct a bridge or a tunnel. The fact that the Governor and the members of the State Highway Advisory Council recommended the construction of a bridge fortifies the conclusion that the action of the Commission was not corrupt. We cannot agree with complainant that the decision of the Commission was an unlawful abuse of discretion.

For these reasons we have already decided in a *per curiam* opinion that the decree of the chancellor will be affirmed.