CODDINGTON ET AL. *v.* HELBIG ET AL., BOARD OF COUNTY COMMISSIONERS

[No. 166, October Term, 1949.]

*Decided May 11, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Walter C. Capper,* with whom were *Edward J. Ryan* and *Capper & Jenkins* on the brief, for the appellants.

*Neil C. Fraley* and *Walter W. Dawson, State's Attorney for Garrett County,* with whom was *William R. Offutt* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for injunction was brought by eight taxpayers of Garrett County to restrain the Board of County Commissioners of Garrett County from expending certain borrowed money for the construction of two high school buildings, one near Oakland, the other in the locality known as the Cove, and from making any contracts or incurring any obligations for that purpose.

The bill of complaint recites that the County Commissioners were authorized by the Maryland Legislature in 1947 to borrow not more than $1,500,000, with which "to erect new high school and elementary school buildings and to improve and/or make additions to existing high school and elementary school buildings in the towns of Oakland, Accident, Friendsville, Kitzmiller and Grantsville and in any other community or communities requiring such new buildings, additions, and/or improvements as the advisory committee and the County Commissioners recommend." Laws of 1947, ch. 575, § 5.

The bill then asserts that the Commissioners are required by this Act not only to construct new school buildings, but also to improve existing school buildings; but they have adopted what is known as the Master Plan, under which they intend (1) to build two high school buildings at a cost of about $2,000,000, having already purchased two tracts of land for the sites, one between Oakland and Mountain Lake Park to serve the Oakland area, the other at the Cove to serve the northern section of the county, and (2) to abandon the high schools in Accident, Friendsville, Kitzmiller and Grantsville.

The bill then charges that the action of the Commissioners is unlawful, for if they carry out their plan, they will expend not only all the money borrowed by authority of the 1947 Act, but also the balance remaining from the levies made in compliance with Chapter 790 of the Laws of 1945, and consequently they will be unable to make any improvements whatever to the school buildings in Accident, Friendsville, Kitzmiller and Grantsville, al-

though such improvements were intended by the Legislature.

On September 19, 1949, the Commissioners demurred to the bill, stating that it was "bad in substance and insufficient in law," but not stating any special grounds of the demurrer. The case was set for hearing on demurrer before the Circuit Court at Oakland on October 29. Just before the Court was ready to hear the arguments, complainants filed a motion that the demurrer be not received for the reason that it did not comply with General Equity Rule 18, which requires that a demurrer to a bill of complaint shall state "the particular part or parts demurred to, and the special grounds of demurrer." Instead of pressing the motion, however, counsel for complainants proceeded to argue the case. On November 10 the Court filed an opinion ruling (1) that the form of the demurrer seemed sufficient to raise the question of the right of complainants to an injunction; and (2) that the bill did not state sufficient cause for relief. On November 28 the Court entered a decree overruling complainants' motion *ne recipiatur*, and sustaining defendants' demurrer and dismissing the bill. From that decree complainants appealed to this Court.

Complainants now advance the objection that, since they were not informed of the special grounds of the demurrer prior to the hearing, they were unable to prepare sufficiently for the argument of the case. The rules of court should, of course, be strictly complied with. But in this particular case the motion *ne recipiatur* was not filed until a few minutes before the hearing on the demurrer before the full bench of the Fourth Judicial Circuit, after the three Judges had come to Oakland. Chief Judge Mish came from Hagerstown, and Associate Judges Henderson and Bruce from Cumberland. Counsel for the Commissioners state (1) that at no time during the period of forty days prior to the hearing was any objection made to having the case heard on demurrer; (2) that even on the day of the hearing, counsel for complainants did not utter a word of com-

plaint that they were unprepared to argue the case; (3) that they not only argued the case but submitted a brief to the Court; and (4) that the first time any complaint was made by counsel for complainants that they were unprepared to argue the case was when they made this statement in the brief filed in the Court of Appeals. As there was only one basic question in the case, and the Commissioners demurred to the entire bill, we find no reason to believe that counsel were prejudiced. In view of the exceptional circumsances, we think it unnecessary to reverse the decree on the technical ground that General Equity Rule 18 was not strictly complied with.

We come now to the merits of the controversy. The two main charges of the bill are: (1) that the County Commissioners are planning to abandon the high schools in Accident, Friendsville, Kitzmiller and Grantsville; and (2) that, if they carry out their plan to construct the two high school buildings at a cost of $2,000,000, no money will be left to make any improvements to the existing school buildings.

Concerning the alleged abandonment of the four high schools, it is sufficient to say that the County Commissioners have no authority to abandon any high school. Except where otherwise provided by statute, educational matters affecting a County are under the control of the County Board of Education. Code 1939, art. 77, sec. 3. Moreover the Act of 1947, now under consideration, provides that all plans for the erection of new school buildings shall be subject to the approval of the State Superintendent of Schools. There is also a provision in the State Public Education Law that the State Superintendent of Schools shall, subject to the rules and regulations of the State Board of Education, pass upon all proposals for the purchase of grounds, school sites or buildings. Code 1939, art. 77, sec. 30. In the absence of any allegation in the bill to the contrary, it may be assumed that the challenged plans of the Commissioners were approved by the State Superintendent.

The law is firmly established that a court of equity, on the suit of a taxpayer, will restrain a municipal corporation or an administrative agency from entering into or performing an unlawful or *ultra vires* contract, when such action may injuriously affect the taxpayer's rights and property. But where the action of a municipal corporation or administrative agency is within the scope of its authority, and does not affect the vested rights of liberty or property, the court will not review its exercise of discretion, unless such exercise is fraudulent or corrupt or such abuse of discretion as to amount to a breach of trust. *Blundon v. Crosier,* 93 Md. 355, 361, 49 A. 1; *Murphy v. State Roads Commission,* 159 Md. 7, 14, 149 A. 566; *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482. The courts assume the fitness of administrative officials who are familiar with the matter in dispute and informed by training and experience to pass upon the questions of fact presented to them. Therefore, the courts feel that they should not substitute their own judgments for the findings of administrative officials in the absence of unusual circumstances.

It is specifically held that when a controversy is one concerning the proper administration of the public school system of the State, the Court ordinarily has no power to interfere. This is an administrative function to be exercised by the officials to whom the Legislature has delegated authority over the administration of the schools. *Board of School Com'rs of Caroline County v. Breeding,* 126 Md. 83, 94 A. 328. In *Wiley v. Board of School Com'rs of Allegany County,* 51 Md. 401, 404, a suit to restrain County School Commissioners from converting a primary school into a high school, Judge Alvey said: "If the proposed act in establishing the high school be within the scope of the authority delegated, as it clearly is, it is not competent to a court of equity to restrain the exercise of the discretion of the commissioners given by the statute, unless it be clearly shown that the power has been, or is about to be corruptly and fraudulently used. * * * And if there be an attempt

to apply the funds to objects not embraced within the power granted, or to objects within the power, but in total disregard of essential conditions prescribed by the statute to make it lawful to appropriate the funds, a court of equity will interfere to restrain such action. * * * But so long as such body of public functionaries confine themselves within the limits of the power delegated, the court will not interfere with the exercise of their discretionary powers, or undertake to determine the question whether the act complained of be wise or unwise, good or bad."

In the instant case there is no allegation that the County Commissioners are acting fraudulently. The only question for decision, therefore, is whether the bill alleges such gross abuse of discretion as to amount to breach of trust. There is no doubt that the Commissioners have the authority to erect high school buildings in places other than the towns mentioned in the Act, for the Act gives them broad authority, subject only to the State Superintendent's approval, to build school buildings in any community or communities that need new buildings.

It is significant that Chapter 790 of the Laws of 1945, which authorized the Commissioners to levy a total of $221,000 for the years 1946 to 1953 for school purposes, specified the amount which the Commissioners were to spend for each school. The sum of $150,000 was to be spent for a new high school building at Oakland, and the balance was to be spent to improve the schools at Accident, Friendsville, Kitzmiller, Grantsville and other places. But the Act of 1945 was repealed by the Act of 1947, and the Act of 1947 does not indicate how the sum of $1,500,000 is to be allocated. The Commissioners, acting upon the advice of an Advisory Committee of seven citizens, now have the discretionary power to construct buildings and to make improvements and additions to buildings, subject to the State Superintendent's approval. The Act does not specify how much shall be spent for erection of new buildings, or how much for im-

provements and additions. It is not, therefore, the function of the Court to direct the Commissioners how much they must spend for new buildings and how much for improvements and additions.

Of course, the supposition of complainants that the cost of the two proposed buildings will be approximately $2,000,000 may not prove to be correct. On the other hand, if it is correct, it is possible that the Commissioners may have some further method of financing the cost of construction. It was suggested that the Commissioners may have in view the possibility of receiving some State or Federal appropriation to supplement the fund borrowed by authority of the 1947 Act. In any event, since the Court is not in a position to determine the amounts, if any, that are needed for improvements, the allegation that none of the borrowed money will be left for improvements to existing schools is not sufficient to charge such abuse of discretion as to amount to breach of trust.

For these reasons we must affirm the decree of the Court below sustaining the demurrer to the bill of complaint and dismissing the bill.

*Decree affirmed, with costs.*