BOARD OF EDUCATION OF CARROLL COUNTY
ET AL. *v.* ALLENDER
ALLENDER *v.* BOARD OF EDUCATION OF
CARROLL COUNTY ET AL.

[No. 121, October Term, 1954.]
(Two Appeals In One Record)

 

 

 

*Decided March 18, 1955.*

The cause was argued before BRUNE, C. J., DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Stanford Hoff,* with whom were *L. Pearce Bowlus* and *Sponseller & Hoff,* on the brief, for appellant, Board of Education of Carroll County.

*Ralph G. Hoffman,* for appellant, Westminster Hardware Company.

*John Wood* and *John W. Hessian, Jr.,* with whom were *Paul Martin, Smith & Hessian* and *Joseph S. Kaufman,* on the brief, for appellee and cross-appellant, Joseph W. Allender.

DELAPLAINE, J., delivered the opinion of the Court.

In 1954 the Board of Education of Carroll County decided to construct a high school building in the northeastern section of the county, to be called the North Carroll High School, and advertised for bids for general construction of the building, for plumbing and heating, and for electrical work. The Board's advertisement appeared in a Westminster newspaper over the names of Paul Niswander, president, and Samuel M. Jenness, secretary. Jenness is Superintendent of Schools of Carroll County. The text of the advertisement follows:

> "The Board of Education of Carroll County will have available on June 25 plans and specifications for the construction of a high school building on route 30 near Greenmount, Maryland. Plans have been prepared by the office of B. E. Starr, Harrisburg, Pennsylvania. Bids will be received separately on General Construction, Plumbing and Heating, and Electrical Work. Contractors may secure plans by depositing $50.00 (fifty dollars) per set. Opening of bids on this construction will be at the regular meeting of the Board of Education on July 20, 1954."

On July 12, 1954, Starr, the architect of the building, issued a three-page bulletin concerning the plumbing and heating contract. He had discovered that certain supplemental specifications were necessary to clarify the drawings and specifications for the building, and he directed that these specifications be incorporated in the proposals. At the end of the bulletin appeared the following specifications:

"Furnish Bid Bond by reputable Bonding Company for 10% of the amount of bid. This bond will guarantee the signing of agreement by contractor if awarded the contract. In case of refusal to sign agreement, the bond will be forfeited.

"A certified check in the amount of 10% of the amount of the bid and made payable to the Board of Education, Carroll County, Maryland, will be acceptable in lieu of Bid Bond."

The bids for all three contracts were opened at a meeting of the Board on July 20 at 11 o'clock. About forty bidders attended the meeting. Eight bids were received for the contract for plumbing and heating. The lowest bid for this contract, which was submitted by Westminster Hardware Company, was $82,324. The next lowest bid, which was submitted by Joseph W. Allender, trading as J. H. Allender Sons Company, was $83,784.

The Board did not award any contract on that day; but on July 21 Superintendent Jenness wrote a letter to Allender, who resides at Hampstead, thanking him for his interest and returning his bond. The Superintendent said in the letter: "We are returning herewith the bid bond which you submitted with your bid on the North Carroll High School. No official awarding of contracts was made yesterday but it is likely that contracts will be concluded with the Westminster Hardware Company in the near future."

On July 23 Allender visited the Superintendent's office for the purpose of inspecting the hardware company's

bid. The Superintendent told him that he had returned the bonds and checks to the bidders. Allender's curiosity was aroused. He was puzzled by the fact that the Superintendent had kept the bond of the lowest bidder for general construction and the bond of the lowest bidder for the electrical work, but had return the hardware company's check. He learned upon investigation that the hardware company had not furnished either a bond or a certified check.

The total amount of the bids greatly exceeded the estimate of the cost of construction, and the Board accordingly delegated the Superintendent to ask the County Commissioners for their permission to proceed with the project in spite of the additional cost. The Commissioners gave their consent, and on August 17 the Board awarded the three contracts. The contract for plumbing and heating was awarded to the hardware company as the lowest responsible bidder.

On August 25 Allender filed this suit for injunction in the Circuit Court for Carroll County. He alleged that his bid was accompanied by a bid bond, as required by the architect's specification, but that the hardware company's bid was not accompanied by either a bond or a certified check at the time the bids were opened. He alleged that the hardware company was awarded the contract despite the fact that it had not complied with the prescribed requirement and was not entitled to have its bid considered. He asserted that all bidders should be permitted to bid on an equal basis, but that the action of the Board was discriminatory, resulting from collusion and favoritism, and constituted an abuse of official discretion. He prayed (1) that the Board and the hardware company be enjoined from entering into or carrying out the contract, and (2) that the Board be ordered to award the contract to him as "the lowest legitimate bidder."

The chancellor overruled demurrers to the bill of complaint. Thereupon defendants filed answers to the bill.

The Board admitted that the hardware company's bid was not accompanied by a bond or certified check when

the bids were opened; but it averred that the bid was accompanied by an uncertified check for more than 10 per cent of the amount of the bid; that immediately thereafter the Board was notified by the local agent of Glens Falls Insurance Company that a bond had been issued; and that when the contract was awarded the Board was in possession of the bond. The Board denied that the award was arbitrary or discriminatory, or that it was the result of collusion and favoritism, or that it constituted an abuse of discretion. It declared that it awarded the contract to the lowest bidder with the object of saving public funds, that it was motivated solely by a desire to protect the interests of the taxpayers of Carroll County, and that it acted in their best interests.

The hardware company similarly admitted that its bid was not accompanied by a bond or certified check when the bids were opened; but it averred that its bid was accompanied by an uncertified check for more than the 10 per cent of the amount of the bid; that application had been made to Glens Falls Insurance Company for a bid bond and when the bids were opened the insurance company had already authorized issuance of the bond; that the local agent of the company called the office of the Superintendent of Schools to report that the bond had been authorized and was available immediately, but at that moment he was unable to speak to the Superintendent, as he was already in conference with the bidders just prior to the opening of the bids; and that the bond was delivered to the Superintendent on July 23.

Sterling R. Schaeffer, secretary and treasurer of the hardware company, testified that it was shortly after 9 o'clock on the morning of July 20 that he applied to Clarence H. Aldridge, an insurance agent in Westminster, for a bond to accompany the hardware company's bid for the contract for plumbing and heating. The agent called the Baltimore branch office of Glens Falls Insurance Company to obtain authority to issue the bond, but he did not obtain it until about ten minutes before 11 o'clock. By that time Schaeffer had left the hardware

store and had gone to the Superintendent's office, where he presented his corporation's bid of $82,324 and an uncertified check for $8,332.40. By error the amount of the check was made for $100 more than required. The agent then phoned to the Superintendent's office to report that the bond had been authorized, but the Superintendent was then at the meeting of the Board. Before the bond was delivered to the Board, Schaeffer asked the Superintendent to return the check. The Superintendent gave it back to him upon his assurance "that the bond would be forthcoming."

The chancellor felt (1) that the Board should have rejected the bid because it did not comply with the specification, and (2) that the Board should advertise for new bids. On November 3 the chancellor passed a decree enjoining the Board from entering into any contract with the hardware company based on its bid of July 20. Defendants appealed from that decree.

On November 17 complainant petitioned for modification of the decree. He contended that the chancellor, after ruling that the bid of the hardware company was not acceptable, should have ordered the Board to accept one of the other bids. The chancellor denied the petition, and complainant appealed from the order of denial.

The chancellor based his decision entirely on one case, *Harris v. City of Philadelphia*, 283 Pa. 496, 129 A. 460. It was shown in that case that Philadelphia, through its Department of City Transit, advertised for bids for the construction of a section of the Broad Street Subway, and that attention had been called to an ordinance requiring bids to be accompanied by a certified check for 5 per cent of the total amount of the bid. When the bids were opened, it was found that the appellant had submitted the lowest bid, $16,749,936, which was about $113,500 lower than the next lowest bid. But it was also found that his check was about $12,500 short of the amount necessary to make 5 per cent of the total amount of the bid. After his attention was called to the deficiency, he deposited an additional check for $25,000.

The City Solicitor advised that, since the bid was not accompanied by a check in the required amount, the appellant could not be awarded the contract. The appellant thereupon filed suit to enjoin the Director of Transit from rejecting his bid. He argued that the irregularity in the deposit was merely a technical one, and that the purpose of the deposit was merely to show good faith and to guarantee that the bidder, if successful, would enter into a contract or forfeit the deposit or so much thereof as would be necessary to reimburse the City for the difference between the amount of the bid and the cost of doing the work. He urged that the Director had the right to exercise his discretion, and that the City should not be deprived of the opportunity to save the taxpayers a large sum of money merely on account of a technicality. The Supreme Court of Pennsylvania held that the appellant's failure to comply with the requirement of the ordinance was more than a mere technical irregularity, because the provision of the ordinance was mandatory. That case is quite different from the case before us, because we have here no allegation or proof that there was any noncompliance with any statute or ordinance.

It is important to recognize the distinction between those requirements which a statute or ordinance lays down for the award of bids and those requirements which have been formulated by an administrative agency in the exercise of its discretion. In *City of Baltimore v. Weatherby*, 52 Md. 442, 451, the objection was made that the Board of Commissioners of Public Schools of Baltimore City had advertised for sealed proposals to supply one of the public schools with heating apparatus, and that a committee of the Board had opened the proposals and awarded the contract without having laid the proposals before the Mayor. It was contended that this action was in violation of a municipal ordinance. The Court of Appeals held that the matter was completely within the control of the Board. Judge Alvey said in the opinion of the Court: "If there was no ordi-

nance in existence at the time of the transaction in question requiring the Board of Commissioners of Public Schools to advertise for sealed proposals, * * * then * * * there was no ground for the injunction."

Under the Public Education Law of Maryland, Code 1951, art. 77, sec. 53, each County Board of Education is authorized, with the approval of the State Superintendent of Schools, to construct school buildings and approve contracts for such work, and to employ an architect or architects, on the recommendation of the County Superintendent of Schools, to assist in the preparation of plans and specifications for remodeling old buildings and for constructing new buildings.

Section 71 of this Law, which governs the advertisement for bids, provides as follows:

"Where the cost of any school building, improvement, supplies or equipment of any sort exceeds the sum of One Thousand Dollars, the Board of Education in each county shall advertise for bids in one or more newspapers published in their respective counties, publication of such advertisement to appear at least one week prior to the date on which bids are to be filed, and the contract for any such school building, improvement, supplies or other equipment shall be awarded to the lowest responsible bidder, but the Board of Education in the respective counties shall have the right to reject any and all bids and to re-advertise for other bids, and any contract entered into or purchase made in violation of the provisions of this section shall be null and void; provided, however, that the provisions of this section shall not apply to contracts for the purchase of books and/or other materials of instruction, * * * and provided further that nothing in this section shall apply to emergency repairs during the period of the regular school year."

We have held that the statutory requirement that the Board of Education shall award certain contracts costing more than $1,000 to "the lowest responsible bidder" is mandatory. As we said in *Hanna v. Board of Education of Wicomico County*, 200 Md. 49, 53, 87 A. 2d 846, the purpose of this provision is to secure unrestricted competitive bidding so as to prevent favoritism and collusion and thereby procure public improvements at the lowest cost to the taxpayers. To achieve this objective all bidders should be put on terms of equality and should be permitted to bid on substantially the same proposition. Hence, the plans and specifications of a contract should be available to all persons who wish to bid thereon in order to enable them to compete on an equal basis and without favoritism.

However, where there has not been any violation of a statute or ordinance, an administrative agency, in determining who is the lowest responsible bidder, has a wide discretion which will not be controlled by the courts except for fraud, collusion, or arbitrary discrimination. In *Maryland Pavement Co. v. Mahool*, 110 Md. 397, 408, 409, 72 A. 833, this Court said that public officials need not be guided in making an award solely by the question of the financial responsibility of a bidder, but they may consider his ability to respond to the requirements of the contract and his general qualifications to properly perform the work.

Since there is no allegation in this case of any violation of a statute or ordinance and no allegation of fraud, the crucial question is whether the action of the Board of Education in awarding the contract to the hardware company was so collusive and discriminatory as to constitute an abuse of discretion. It is an accepted rule in this State that a court of equity will restrain an administrative agency from entering into or performing a void or *ultra vires* contract or from acting fraudulently or so arbitrarily or unjustly as to constitute a violation of trust, but it will not review the exercise of the agency's discretion where it acts within the scope of its authority and does not exercise its power fraudulently or corruptly.

*Blundon v. Crosier,* 93 Md. 355, 361, 49 A. 1; *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482; *Coddington v. Helbig,* 195 Md. 330, 337, 73 A. 2d 454.

Of course, bidders should make every effort to comply as strictly as possible with specifications. On the other hand, it is the duty of an administrative agency to secure the most advantageous contracts possible for the accomplishment of its work. A bidder's variation from specifications will not exclude him from consideration for the award of the contract unless it is so substantial as to give him a special advantage over the other bidders. In judging whether or not the omission or irregularity in a bid is so substantial as to invalidate it, the court must be careful not to thwart the purpose of competitive bidding by declaring the lowest bid invalid on account of variations that are not material. *George A. Fuller Co. v. Elderkin,* 160 Md. 660, 665, 154 A. 548.

It is appropriate here to explain that there is a definite distinction between a bid bond, as requested by the architect in this case, and a performance bond. Appellant cited *Albanese v. Machetto,* 7 N. J. Super. 188, 68 A. 2d 659, 72 A. 2d 521, 522; but in that case a performance bond was contemplated. The Board of Commissioners of the Township of North Bergen, New Jersey, awarded a contract for garbage removal to a partnership, the lowest bidder. It appeared that the partnership did not comply with a requirement that each bid should be accompanied by a certificate of a surety company to provide the bidder with a performance bond. The Court held that the requirement was a material one and that the partnership's noncompliance with it rendered the award illegal because it "thwarted a legislative mandate."

In the present case the requirement of a bid bond or a certified check was an afterthought of the architect at Harrisburg. It was inserted at the end of the bulletin mailed to prospective bidders only one week before the opening of the bids. A bid bond guarantees that the successful bidder will execute the contract. This type of bond gives protection to the public agency for a brief

period. A performance bond, for which there is a much higher premium, guarantees that the bidder will perform the entire contract after he executes it.

Complainant seemed to be critical of Superintendent Jenness because he was evasive on July 23. Even if he was, we find no basis for the charge of collusion. It is understandable that the members of the Board desired to award the contract to Westminster Hardware Company. By mandate of the Legislature, Code 1951, art. 77, sec. 71, the Board was required to award the contract to the lowest responsible bidder. The hardware company was the lowest bidder. As this corporation has been an established concern in Westminster for more than a half century, the Board considered it the lowest responsible bidder. By accepting the lowest bid, the Board would also save the taxpayers $1,460.

Of course, Schaeffer could have avoided all of the trouble if he had applied for the bond sooner. Whether he had simply neglected to apply sooner, or whether he had planned to present a certified check and on the last day decided to obtain a bond, or whether he thought there would be no difficulty in getting the bond immediately upon application, we do not know. In any event, it took nearly two hours to obtain authority from Baltimore to issue the bond, and it was not delivered to the Board until several days later. However, Schaeffer testified that his corporation had sufficient funds to pay the check, but he preferred to present a bond and he paid the premium, as many other bidders did, so that his corporation was not given any substantial advantage over other bidders.

As the evidence failed to establish that the award of the contract was collusive and discriminatory and constituted an abuse of discretion, the decree of the chancellor granting the injunction must be reversed.

*Decree reversed and bill of complaint dismissed, with costs.*