WILLIAM W. COTTMAN, III *v.* THE DEPARTMENT
OF NATURAL RESOURCES FOR THE STATE
OF MARYLAND ET AL.

[No. 188, September Term, 1979.]

*Decided November 14, 1979.*

The cause was argued before MOORE, LOWE and LISS, JJ.

*Thomas Sisk,* with whom was *Elise Davis* on the brief, for appellant.

*Michael J. Scibinico, II, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Edward F. Lawson, Assistant Attorney General,* on the brief, for appellee Department of Natural Resources. *Malcolm B. Kane* for other appellee.

LOWE, J., delivered the opinion of the Court.

.  The Circuit Court for Anne Arundel County sustained, without leave to amend, a demurrer of the Department of Natural Resources for the State of Maryland (DNR) to an Amended Bill of Complaint and Petition for Ex Parte Injunction by William W. Cottman, III. Because the court held that

> "[t]he Amended Bill of Complaint fails to state a cause of action,"

we are concerned only with what legally constitutes a cause of action, and whether what was alleged in the amended bill of complaint factually constituted a cause of action. A demurrer, for the purpose of a demurrer only, has the effect of admitting the truth of the facts alleged in the bill of complaint. *Hall v. Barlow Corp.*, 255 Md. 28, 42 (1969); *Harding v. Ja Laur Corp.*, 20 Md. App. 209, 213 (1974). We will, therefore, use as our recitation of facts those taken from the amended bill, elliptically edited.

### —the amended bill of complaint—

Appellant is a farmer resident in Montgomery County. For the past several years he has leased for farming public land from the Department of Natural Resources known as the Cloverdale Property, now a part of Seneca Creek State Park. The then current lease ran from November 1, 1976 to October 31, 1977, and thereafter continued on a month to month basis until such time as it is terminated by either party by thirty day written notice. Appellant has not terminated the lease nor has he received written notice of termination from the Department of Natural Resources.

While appellant was still a tenant of the property, prior to the end of the initial term, DNR advertised in the Gaithersburg Gazette (beginning on July 7, 1977) that the property (and other like property) would be up for bid for a three year term. The advertisement provided that sealed bids were to be submitted and that no bids would be accepted after 2:00 p.m. on Friday, July 18, 1977.

The bid instructions provided in part that bidders should review lease samples which were in pertinent part identical to appellant's lease. The lease sample provided that a lessee may not sublease or assign the leased property without prior permission of the DNR.

Although appellant believed he had a valid lease, he felt compelled to bid on the property in question in order to protect his interest, and submitted a sealed bid on Friday, July 18, 1977 prior to 2:00 p.m. at the designated place. Two other individuals bid on other properties by sealed bid prior to the 2:00 p.m. deadline. All bids were accepted by P. L. Wilbur, Assistant Superintendent of Seneca Park, an employee of the Department of Natural Resources.

After the 2:00 p.m. deadline had passed, appellee John Roswell submitted unsealed bids on the property in question, as well as other property open for lease, and such bids were accepted by Wilbur without any other bidders present. The absence of seal, and the submission past deadline, were contrary to the bidding instructions designated by the DNR. Roswell and the appellant were the only bidders on the subject property, and Roswell was awarded the property in question by DNR. Appellee Roswell did not have the financial ability, nor did he intend, at the time of submitting the bids, to lease the farmland and farm it himself, as required and anticipated by DNR's indications in the bid instructions and sample lease. Roswell's intention was to sublease the land to the "Warfield Bros.", and he prevailed upon DNR to permit the property to be leased jointly by himself and the entity known as the "Warfield Bros." At that time Roswell and "Warfield Bros." fraudulently informed DNR that "Warfield Bros." was only supplying financial aid to Appellee Roswell and only wanted "Warfield Bros.'" name on the lease as they (or it) were paying the rent for the first year. Such statement was fraudulent because both knew that they had entered into a contract whereby only "Warfield Bros." would farm most of the land and manage and control all of it.

Even though the DNR was aware 1) that the bidding of Roswell was not in accordance with its own rules, 2) that Roswell never intended to farm the property himself, 3) that

the representations made to DNR by Roswell and/or "Warfield Bros." were false, and 4) that "Warfield Bros." have acquired the property without bidding, by way of a fraudulent scheme, DNR has refused to void the present lease and either restore the land to appellant or open it for proper bidding.

Appellant then contended that the awarding of the property to Roswell by DNR was contrary to the terms of appellant's existing lease, contrary to the advertised terms of the bidding, and awarding it to a third party by the means stated above was fraudulent, arbitrary and capricious.

Appellant attached to these recitations all pertinent documents upon which he relied including his lease, the bid advertisements, instructions for bidders, his lease as a sample lease, the lease between DNR and Roswell including "Warfield Bros." and the agreement between Roswell and "Warfield Bros."

—the opinion of the trial court—

In holding that appellant failed to state a cause of action, the trial judge presupposed that the complaint was founded upon the "irregularities" in the bidding procedure and the award of the lease,

> "The Amended Bill of Complaint seeks to set aside the bidding of John Roswell, one of the Respondents, for a lease of public land, conducted by the Respondent, The Department of Natural Resources for the State of Maryland, based on alleged irregularities in the acceptance of the bids.

> The irregularities alleged are briefly that there were only two bidders for the lease, the Complainant and Roswell. Roswell's bid was submitted beyond the designated deadline and the bid was unsealed contrary to the Department of Natural Resources' own rules. Further, that Roswell intended to sub-lease the land to 'Warfield Bros.' and fraudulently secured 'Warfield Bros.' name on the

> lease which in effect allowed 'Warfield Bros.' to acquire the property without bidding."

He held that an administrative agency has wide discretion to accept or reject "irregular" bids, citing *Board of Education v. Allender,* 206 Md. 466, 475-476 (1955). Since that discretion will not be controlled by courts except for fraud, collusion or arbitrary discrimination, and because

> "[n]o facts are alleged which would constitute, or imply, fraud,"

the judge concluded the bill of complaint did not make out a cause of action.

> "At most, the facts as alleged show an opportunity for collusion, which the Court finds insufficient as a matter of law."

Although the parties seem attracted to the question whether the irregularities overlooked were of sufficient moment to give undue advantage justifying judicial interference,[1] the issue appears to us to be primarily whether the circumstances (cited by appellant) are sufficient allegations from which fraud, collusion or arbitrary discrimination *could* be inferred. As pointed out in *Allender, supra* at 475:

> "[W]here there has not been any violation of a statute or ordinance, an administrative agency, in determining who is the lowest responsible bidder, has a wide discretion which will not be controlled by the courts except for fraud, collusion, or arbitrary discrimination.
>
> . . .
>
> It is an accepted rule in this State that a court of equity will restrain an administrative agency from ... acting fraudulently or so arbitrarily or unjustly as to constitute a violation of trust, but it will not

---

1. DNR contends that:

"The real question here must be whether the bidding irregularity caused any difference in the competitive positions of the bidders."

review the exercise of the agency's discretion where it acts within the scope of its authority and does not exercise its power fraudulently or corruptly."

The preoccupation with the undue advantage argument obviously comes from Allender's succeeding observation that

"[a] bidder's variation from specifications will not exclude him from consideration for the award of the contract unless it is so substantial as to give him a special advantage over the other bidders." *Id.* at 476.

Were appellant confined to variations from specifications as part of the sole case, it is unlikely that the variations were so substantial as to give a special advantage to Roswell. We are convinced that appellant would fail to make out such a case. We are not convinced, however, that appellant's allegations failed to set out a case of fraud and/or collusion.

Summarized, his allegations indicate that he was and is entitled to possession of certain farmland, under a lease that has never been terminated in accordance with its terms.[2] The violation of a valid lease is the legal right allegedly invaded. *Debnam v. Simonson,* 124 Md. 354, 358 (1914).

The allegations then set forth that DNR, in combination with Roswell and "Warfield Bros." (which Cottman did not join), colluded to deprive appellant of his leased land by establishing a publicly advertised bidding procedure and policy to which they did not conform nor compel conformity among themselves, to the detriment of appellant. As pled, appellant set out sufficient facts from which an inference could be drawn that the collusion of appellees together with "Warfield Bros.", defrauded him and deprived, or was about to deprive, him of his lawful right of possession under a valid lease. It is sufficient that these facts as stated will, if proven, support an inference of fraud; it is not necessary that they be accompanied by evidence by which they may be

---

2. Appellees assert that appellant's actual knowledge displayed by his bid participation obviated the need to comply with the continual obligation to 30 days' notice in writing to effect termination of the lease. At best, this is a factual defense, but unconvincing at that. The contract cannot be rewritten to suit DNR unilaterally.

established. *Willoughby v. Trevisonno,* 202 Md. 442, 451 (1953); *Upman v. Thomey,* 145 Md. 347 (1924).

The bill of complaint described a combination which at common law is a criminal conspiracy, setting forth facts done to wrongfully deprive appellant of his contractual right of possession to his injury. *Cf. Klingel's Pharmacy v. Sharp and Dohme,* 104 Md. 218, 231 (1906). The violation of this right by the unlawful combination is actionable at law as an action on the case, *Kimball v. Harman and Burch,* 34 Md. 407, 409-410 (1871), for damages, and if preventable may be restrained in equity by enjoining the performance of fraudulent and collusive acts allegedly participated in by a State agency. *Allender, supra* at 475.

The trial judge held that the facts alleged "show an opportunity for collusion, which the Court finds insufficient as a matter of law." But that is not all that was shown. Appellant alleged facts establishing inferential indicia of, as well as the "opportunity for", collusion, the beneficiaries of the fraud, and the injury to himself resulting therefrom. Those allegations support strong inference of fraudulent and collusive conduct without evidence necessary to that purpose. *Willoughby, supra.* The weight of the inference and its persuasive effect is for the factfinder at trial, but the existence of an inference will keep appellant in court.

—the Cottman lease—

The amended bill of complaint, filed October 26, 1978, alleged that Cottman's lease with DNR for the original term ending October 31, 1977, continued on a month to month basis and, not having been terminated in the manner prescribed by the lease, was still in being. Among his prayers for relief was that the court hold his lease to be valid. Assuming, as we must for purposes of the demurrer, the truth of appellant's allegations that the lease has not been terminated pursuant to the lease requirements—

"This lease will continue in effect from month to month after the expiration of the above term. This

> lease may be terminated upon thirty (30) days written notice by either party."—

the lease was indeed valid entitling him to possession until terminated as prescribed. Furthermore, assuming he was dispossessed by DNR as "Landlord" to make way for the new "tenants", Roswell and "Warfield Bros.", under their lease made January 10, 1978,[3] Cottman may be entitled to damages for the unlawful ejectment.

Although this point was glossed over in the appellate briefs, DNR argued below that Cottman's lease was terminated as a matter of law by

> "the request for bids on the property, and the Complainant's participation in that process . . . ."

It contended that

> "notice purposed to inform may be replaced by actual knowledge, especially when the knowledge has been acted upon without reliance upon the notification's absence or its defects. *Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687 (1966), *Rolfe v. Clark,* 269 Md. 14, 18, 304 A.2d 228 [sic] (1973)."

Appellant's bill of complaint, however, alleged that his participation was compelled "in order to protect his interest"; but, even beyond that arguable allegation, we note that DNR's cited authorities are inapposite to this case. Both *Clark* and *Rolfe* discuss statutorily prescribed notice, and in both cases, the complaining litigants had full knowledge of all facts. It is in those instances that the Court of Appeals iterated and reiterated that:

> "The law, in its majesty, is not designed to require futile action or idle gestures. It is well settled that notification *purposed to inform* may be replaced by actual knowledge. 1 *Merrill, Notice,* 480. And this is especially so when the knowledge has been acted

---

3. This lease was similar to that of Cottman being for an original term of 1 year and continuing on a month to month basis thereafter until terminated in writing by either party providing 30 days' notice.

upon without reliance upon the notification's absence or its defects. *Ibid.; Cassidy v. Board of Appeals,* 218 Md. 418; 2 *Merrill, Notice,* 384, 444." *Clark v. Wolman,* 243 Md. at 600.

But this is not the case here. In this instance the parties contracted for the 30 day written notice to terminate. Courts cannot rewrite contracts of the parties to suit themselves. See *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 327-328 (1973). Even if we were so inclined, the advertisement to call for bids fell short of being even interpretively a notice to terminate the lease; it was at most an indication of a probability that the lease might be terminated sometime in the future.

It is also significant that in cases of lease termination the Legislature prescribed that leases of varying types were to be terminated in writing and further set out the amount of notice required. Md. Code, Real Prop. Art., § 8-402. In doing so, it indicated limited deviation from the writing requirement and that was only when a tenant gave parole notice to a landlord. Even then, the statute placed the burden on the landlord to "prove the notice from the tenant by competent testimony". Real Prop. Art., § 8-402 (b) (5).

It is of passing interest (if not of immediate concern) that prior to amendment in 1974, the statute appeared to provide that in certain areas of Montgomery County leases could substitute notice time periods or waive them altogether, but that permissible exception was removed by Ch. 375 of the Acts of 1974. This would clearly indicate that the Legislature intended that Montgomery County comply with the written-notice-to-quit requirements of a lease in conformity with the rest of the State, thus reemphasizing the importance placed by the Legislature upon actual written notice as statutorily indicated.

—summary—

The appellant has therefore alleged a two-pronged cause of action: 1) factual circumstances susceptible to an inference of fraud and/or collusion to deprive him of a rightful

possessory interest in leased land, and 2) an unlawful interference with a lease in being. While the amended bill of complaint is not a lesson in clarity, the allegations are sufficient in substance to withstand demurrer. Md. Rule 345 (c). If clarity is all that is lacking, amendments which are encouraged to be freely permitted, *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 29 (1974), should be required.

It should be noted that our holding here does not indicate that were we the factfinder we would be persuaded to draw the inference of fraud or collusion that is available. The likelihood of such a collusive combination to effect the deprivation alleged is one of the issues to be decided, but despite the questionable probabilities involved, the probability has been alleged by inference permissibly drawn from the factual recitations.

—motion to strike part of Appellee
Roswell's brief and appendix—

Appellee Roswell has included in his brief under the Statement of the Case and the Statement of Facts assertions of fact not before the court below at the demurrer stage to which this appeal is addressed. The appendix contains deposed testimony which had nothing to do with the issue before this Court — whether the pleadings have set forth a cause of action.

Appellee Roswell interprets Md. Rule 1031 c 4 as justification for such conduct.

"A clear concise statement of the facts material to a determination of the questions presented. If there is any dispute with regard to any of the facts asserted by the appellant, or a possibility of such a dispute, the appellant shall so state. Reference shall be made to the pages of the record or the transcript of the testimony as contained in the record supporting his assertions." Md. Rule 1031 c 4.

That rule (which applies to appellant's not appellee's brief) obviously speaks to disputed facts asserted in relation to that

234

which is being considered on appeal, not that which may have been introduced at trial, if a trial had ensued. Appellee Roswell's interpretation is flimsy at best. To encourage him to remember that we will not go beyond the record and that he must so restrict his briefs and/or appendices we have, in our discretion (Md. Rule 1082), assessed two-thirds of the costs to him. It is hardly fair that DNR pay for his misinterpretation of a clearly written and obviously purposed rule.

*Judgment reversed.*
*Costs to be paid two-thirds by appellee Roswell, one-third by Department of Natural Resources.*