THE BROADWAY and LOCUST POINT FERRY COMPANY *vs.*
JOSEPH HANKEY.

*Construction of the Act of* 1868, *ch.* 187, *incorporating
the Broadway and Locust Point Ferry Company.*

The Act of Assembly of 1868, ch. 187, incorporating the Broadway and
Locust Point Ferry Company, after conferring general ferry rights,
authorized and empowered the company " to hold and use as a wharf
or landing, for the use of said ferry, the end of the wharf commonly
known as the County wharf, together with a right of way in common
with others, through the centre of said wharf, of the width of ten feet,
as a thoroughfare for travel to and from the end of said wharf." It also
imposed certain conditions, upon the performance of which, by the
company, the privileges conferred by the Act, were made to depend.
HELD:

That the Act of Incorporation was constitutional and valid, and con-
ferred upon the company the exclusive right to hold and use the end
of the wharf for ferry purposes.

APPEAL from the Circuit Court of Baltimore City.

The cause was argued before BARTOL, C. J., MILLER,
ALVEY and ROBINSON, J.

*Robert D. Morrison,* for the appellant.

*William A. Fisher,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of
Baltimore City, granting an injunction to prohibit the ap-
pellant "from closing the ferry gates at the foot of Broad-
way, or in any manner preventing free access to the wharf
there situated."

The cause was heard below, and the injunction granted
upon bill and answer. No question is raised upon the
pleadings; and for the purpose of disposing of the ques-

tions involved in this appeal, and argued at the bar, it is not necessary to recite particularly the several averments in the bill and answer. The facts conceded on both sides are, that Broadway is a public highway, terminating at a public wharf, which extends into the harbor. The appellee claims the right to run his steam ferry-boat from the end of this wharf, across the harbor to Hauber street, and complains that the appellant excludes him from the use of the wharf for that purpose, by closing the ferry gates.

The appellant is also engaged in running steam ferry-boats between the same points, and claims the exclusive use of the end of the wharf, under the Act of Assembly of 1868, ch. 187.

The decision of the case depends upon the true construction and effect of this Act of Assembly.

The Act incorporates the appellant by the name of The Broadway and Locust Point Steam Ferry Company of Maryland, and after conferring general ferry rights, says, " And the said company are hereby authorized and empowered to hold and use, as a wharf or landing, for the use of said ferry, the end of the wharf commonly known as the County wharf, together with a right of way, in common with others, through the centre of said wharf, of the width of ten feet, as a thoroughfare for travel to and from the end of said wharf." It then imposes certain conditions, upon the performance of which, by the company, the privileges conferred by the Act are made to depend.

What rights have been conferred upon the company by this law? Does it give them only the privilege of using the end of the wharf in common with others? or was it intended to confer on them the exclusive use of the end of the wharf, and the use in common with others of the right of way?

We think the latter is the true construction and the real intent of the law.

Although somewhat unskilfully expressed, we think this is the natural meaning of the language employed. The words "in common with others," in the connection in which they are used, relate to and qualify the words immediately preceding, and refer to the right of way; not to the end of the wharf which the company is authorized and empowered to hold and use.

When we consider the intent and object of the Act, the correctness of this construction appears more obvious. The company is required, at its own cost, to construct the wharf so as to extend, with its present width, at least fifty feet beyond its present terminus, and to keep the entire wharf in repair; while they are excluded from the use of the sides of the wharf. They are required to carry firemen, together with their apparatus, accoutrements and horses, and police officers, and funerals, free of charge. It is not reasonable to suppose these onerous conditions would be imposed upon the company, when no privilege is granted to them, except such as may be used by all others in common.

Besides this, the company is required to keep its boats constantly running, which would be impracticable, if others may use the end of the wharf in common with it. The nature of the business they are authorized to carry on, and the duties they are required to perform as a ferry company, are absolutely impracticable, without having the exclusive use of the end of the wharf for their ferryboats. These considerations, and others that might be suggested, tend strongly to support the construction of the law, which we have said may fairly be adopted from an examination of the language employed.

In *Negroes, Bell et al. vs. Jones*, 10 *Md.*, 320, it is said, "In construing a statute, the language employed must be

construed with special reference to the subject-matter legislated upon." And on page 321, the rule laid down for construing, qualifying, or restrictive words which are ambiguous in a statute intended to secure valuable rights, is that they shall not be so construed as to annul the right altogether, or render it of no practical value.

We are clearly of opinion, that under the Act of 1868, the exclusive right to hold and use the end of the wharf for ferry purposes is in the appellant; and that it has the lawful right to exclude the appellee from using it for the same purpose. The Act does not confer on the appellant the exclusive right of ferrying across the harbor; but it confers upon it the exclusive use of the end of the wharf.

The next question is, had the Legislature the constitutional power to pass the law? It being conceded that the wharf in question is a public highway, no doubt can exist of the dominion of the State over it, or of the power of the Legislature in the exercise of the right of eminent domain, to dedicate it to the uses contemplated in the Act. See *O'Connor vs. Pittsburg*, 6 *Harris*, 189; *Case of Philadelphia and Trenton R. R. Co.*, 6 *Wharton*, 43; *Paul vs. Carver*, 12 *Harris*, 207.

The only ground upon which the validity of the law has been assailed is, that it is in violation of the 41st section of the Declaration of Rights, which forbids *monopolies*. We are at a loss to comprehend how the privilege granted to the appellant by the charter is obnoxious to this objection. It is not a monopoly in any sense; but a privilege conferred on the company to be exercised for the public benefit; such a grant by this Legislature has never been considered as creating a monopoly, and no authority has been cited which sustains such a proposition.

Being of opinion that the Act incorporating the appellant is a valid and constitutional law, and that it confers upon the company the exclusive use of the end of the

wharf for the purposes contemplated in the Act, we will sign a decree reversing the order of the Circuit Court and dismissing the bill.

*Order reversed and bill dismissed.*

(Decided 2d July, 1869.)