## KAUFMAN *v.* TAXICAB BUREAU, BALTIMORE CITY POLICE DEPARTMENT

[No. 44, September Term, 1964.]

*Decided November 11, 1964.*

478

The cause was argued before HENDERSON, C. J., and PRESCOTT, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Leonard J. Kerpelman* for the appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court. MARBURY, J., concurs in the result.

This is an appeal from a judgment against the appellant for costs after the Baltimore City Court affirmed the action of the Taxicab Bureau of the Police Department of Baltimore City (Bureau), which refused to issue a taxicab operator's license to the appellant.

The issues involved are not so clearly defined and set forth in the briefs as might be desired: in fact, we find it difficult, on the record presented to us, to state them with clarity and precision. Judge Joseph Carter noted in his opinion dismissing, as premature, an attempted earlier appeal by the same appellant from a refusal to grant him a license that "the status of the record in this case is somewhat confusing." The State, in its brief in this appeal, adds: "Unfortunately, the argumentative 'statement of facts' * * * [in] the appellant's brief does little to clarify this confusion." After a careful reading and re-reading of the record extract and briefs, we are constrained to agree.

The present appeal represents the fifth attempt by the appellant to have the Bureau issue a license to him; all of which were denied. At least two of the previous denials were appealed to the Baltimore City courts; one of the appeals was dismissed; the other affirmed the Bureau's action. No previous appeal was taken from the rulings of the Baltimore City courts to this Court.

The heart of appellant's contentions is that he has been refused a license because he believes in Socialism; therefore he was denied rights guaranteed to him under the First and Fourteenth Amendments of the Constitution of the United States. The record completely fails to sustain this contention. Nowhere in either the lower court's opinion or that of the Bureau is there any mention of appellant's being a Socialist and it is not assigned as a reason for denying the license. (On the contrary, the Supervisor of the Bureau explicitly stated that petitioner's beliefs, or his distribution of literature, had nothing to do with the refusal to grant a license.) The only reference to that fact in the record (other than in a written statement made by appellant's counsel) is contained in a report from a police captain to the Chief Inspector back in 1959 concerning appellant's arrest for, and conviction of, disorderly conduct at that time. The report states that certain police officers, when approaching the main entrance to the campus of City College, saw some 300 to 400 students there gathered. The crowd extended into the street and completely blocked traffic. The "youths" were screaming and threatening bodily harm to the appellant, who was in the center of the crowd. The police asked, "What is all this trouble about?" The appellant replied that he was giving out "socialist material and selling our socialist paper." The report states that appellant was not arrested for distributing the literature but "for acting disorderly by cursing and using loud and abusive language," and this was the offense of which he was convicted. We shall not pursue this contention further, but proceed to consider whether the trial court erred in any other manner in sustaining the refusal to grant the license.

The parties are in dispute as to the law governing this appeal. Section 216 of the Charter & P.L.L. of Baltimore City (1949) provides that appeals from the action of the Bureau are to be made in the same manner as appeals from the Commissioner of Motor Vehicles (see Code [1957], Article 66½ § 109). However, this Court held in *Green v. Baltimore*, 181 Md. 372, that the Police Department of Baltimore City is a State agency. Code (1957), Article 41, § 244, states that the Administrative Procedure Act (sections 244 *et seq.*) shall apply to all State agencies except those expressly excluded there-

from; and Section 3 of Ch. 94 of the Acts of 1957, which enacted the Administrative Procedure Act, provides that "* * * all Acts or parts of Acts which are inconsistent with the provisions of this Act are hereby repealed to the extent of such inconsistency * * *." Consequently, we hold that Code (1957), Article 41, § 256 is the law governing this appeal. In *Bernstein v. Real Estate Comm. of Md.*, 221 Md. 221, we noted that the Administrative Procedure Act may have broadened to some extent the scope of judicial review of the findings, inferences, conclusions and decisions of administrative agencies, but it has not altered the basic concept that a court is not to substitute its judgment for that of the expertise of the persons who constitute the agency from which the appeal is taken. Compare *State Bd. of Reg. v. Ruth,* 223 Md. 428 and *Duncan v. McNitt Coal Co.,* 212 Md. 386.

We, again, comment on the record extract presented to us. The opinions of the trial judges in the two previous appeals to the Baltimore City courts are contained therein, as well as the trial court's opinion in the present appeal. Appellant, in his brief, jumps back and forth from one to the other with such celerity that it is difficult to pin-point exactly what his contentions are, when limited to those that properly can be raised in the present appeal. We do not deem the reasons assigned by the trial judge in the two previous appeals to the Baltimore City courts to be pertinent to the issues involved in this appeal. We shall confine ourselves to the issues of this appeal and determine whether the Supervisor acted arbitrarily or unlawfully in denying the license, and whether the trial court was justified in affirming such action.

The Charter & P.L.L. of Baltimore City (1949), §§ 204 *et seq.,* in pertinent part, provide:

Sec. 205:

\* \* \*

"Each applicant * * * must:

"* * * (b) Be of sound physique, with good eyesight and not subject to epilepsy, veritgo, heart trouble, or *any other infirmity of body or mind* which might render the applicant unfit for the safe operation of a taxicab."

Sec. 209:

"Upon satisfactory fulfillment of the requirements of this sub-title, there shall be issued to the applicant a license, * * *"

And, Sec. 216:

"The Supervisor of the Taxicab Bureau is hereby *vested with discretion* to refuse a license to any applicant if, in his opinion, said license should not be granted because of the applicant's past *criminal record,* accident record, or for any other reason deemed sufficient by him. * * *." (Italics added.)

Appellant does not attack the validity of the above sections, but argues that the authority given by them can only be exercised to protect the public health, safety, welfare, or morals, citing *Niemotko v. Maryland,* 340 U. S. 268 and *Portsmouth Stove & Range Co. v. Baltimore,* 156 Md. 244. With this proposition, we agree.

The decision of the Supervisor, in part follows:

"In the matter of your application filed July 9, 1962, for a taxicab driver's license, you are advised that we have received from Dr. Guttmacher his impression concerning you which I have reviewed and which is essentially negative.

"I have given careful consideration to your application, both in light of your history and of Dr. Guttmacher's report, and I am of the opinion that it would not be in the best interest of the public to grant you a taxicab driver's license.

"In my opinion, in light of your record before me, you have shown a marked animosity toward law and order. Within a comparatively short time you were twice [actually thrice] arrested and convicted for disorderly conduct on a public street. This conduct on each occasion resulted in the gathering of large crowds of young students and required dispersal by the police, while your cooperation with the police in abating the disorder was definitely lacking. Several of these arrests occurred while you were seeking to become a licensed taxicab driver.

\* \* \*

"In view of the foregoing, I do not consider you a fit and proper person to be permitted to drive a taxicab in Baltimore City and therefore herewith deny your application."

It will be noted that the Supervisor based his refusal on the applicant's history, Dr. Guttmacher's impression (which was "essentially negative"), the marked animosity of the applicant towards law and order, his lack of cooperation with the police in abating the disorders created by him, and his convictions of crime. The Supervisor gave additional reasons, but we shall not set them forth or consider them, for we think the ones we have named were sufficient to warrant his action here challenged.

We shall not attempt to state the history in great detail. The record shows that applicant had previously had psychiatric treatment; that he had been convicted of disorderly conduct to the disturbance of the public peace on three separate occasions; on at least two of these occasions large crowds of students had gathered; on one such occasion, applicant was requested by the police Sergeant to move on for "the sake of his [applicant's] own safety," and was answered by, "what is your God-dam name and your God-dam badge number?"; on another such occasion applicant refused to obey a police command; that applicant had made a false statement relative to his employment; and that applicant had "very definite difficulty with employment \* \* \*," having been found "unsatisfactory by the School Board."

With the background of previous psychiatric treatment, disobedience to the law, and difficulty with employment, there came a time when the Supervisor, having in mind the provisions of Section 205 (b), above, asked that the applicant submit to a psychiatric examination by Dr. Guttmacher, a well-known psychiatrist and Chief Medical Officer of the Supreme Bench. This course had been followed before, and the Supervisor saw no reason to treat applicant's case "any differently." This was agreed to and an examination was arranged for by appointment, but applicant failed to keep the appointment.

Later, it was agreed between the Supervisor and the applicant that the Supervisor, in making his ruling upon applicant's request, would be satisfied if he were furnished with a copy of the impressions and conclusions of the psychiatrist rather than the full details of his examination, which, in the eyes of the applicant, would be "snooping into [his] personal, political and private life and should be of no interest to this office [the Bureau's] and it is being used only to embarrass and harrass me." An examination was made by Dr. Guttmacher, and his impression forwarded to the Supervisor. This is the "impression" referred to in the Supervisor's decision, quoted above.

Applicant seems to take the position that because Dr. Guttmacher's impression was described by the Supervisor as being "essentially negative," he, immediately, became entitled to a license, and its denial to him constituted arbitrary conduct on the part of the Supervisor, an abuse of the discretion vested in the Supervisor by Section 216, and a violation of appellant's constitutional right. With this, we are unable to agree. The action of the Supervisor must be considered in the light of the overall picture as we have narrated it above, with Dr. Guttmacher's impression being but one factor. The Supervisor said he had "given careful consideration to [appellant's] application, both in the light of your history and of Dr. Guttmacher's report * * *." We do not have the advantage of the contents of this report. According to the trial court's opinion, this is because, "the petitioner, through his counsel, refused to testify at this hearing and refused to submit to the court for its consideration the report of Dr. Manfred S. Guttmacher [1] * * *." After a careful consideration of all of the factors involved, we are unable to find any abuse of discretion by the Supervisor, or any denial of applicant's constitutional rights.

We think the last statement should be supported by a few pertinent authorities. Taxicab companies in Maryland are common carriers. Code (1957), Article 78, § 2 (d). Within constitutional limitations, local authorities may be authorized to regulate taxicabs. Code (1957), Article 66½ § 1; *Vet. Taxi*

---

1. Appellant's counsel claims the trial judge was mistaken when he included this in his opinion.

*Ass'n v. Yellow Cab Co.,* 192 Md. 551. This includes the right to license their operators in order to protect the public health, welfare, morals, and safety. Cf. *Public Service Comm. v. Sun Cab Co.,* 160 Md. 476. Baltimore City has been granted, by the Legislature, broad authority in matters relating to police powers. Charter & P.L.L. of Baltimore City (1949), § 24. An occupation, under proper circumstances, may be licensed without violating due process, cf. *Leonard v. Earle,* 155 Md. 252, aff., 279 U. S. 392, but, of course, no burdensome conditions, which have no real and substantial relation to the public welfare, may be placed upon a common calling. *Dasch v. Jackson,* 170 Md. 251. Statutes may require (still under proper circumstances) applicants for licenses to have certain personal qualifications, compare *State v. Rice,* 115 Md. 317; 53 C.J.S., *Licenses,* § 34 and they may vest a reasonable discretion in an officer to grant or refuse a license, 53 C.J.S., *Licenses,* § 38, which of course, should not be arbitrarily exercised. *Gonzales v. Ghinger,* 218 Md. 132.

Without unduly prolonging this opinion by setting forth all of the criteria of Section 255 (g) relative to review by the Courts of action of administrative agencies and showing that the trial court's action is supportable under each of them, it is sufficient, we think, to say that we have applied each of said criteria to the trial court's action, and we find no error.

*Judgment affirmed, with costs.*

MARBURY, J., concurs in the result.