BALTIMORE IMPORT CAR SERVICE AND STOR-
AGE, INC. *v.* MARYLAND PORT AU-
THORITY, ET AL.

[No. 391, September Term, 1969.]

*Decided June 3, 1970.*

336

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Wilbur D. Preston, Jr.*, with whom were *B. Ford Davis, Robert M. Wright, William B. Whiteford* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*S. Leonard Rottman, Special Assistant Attorney General*, with whom was *Francis B. Burch, Attorney General*, on the brief, for appellees Maryland Port Authority, Joseph Stanton and W. Gregory Halpin.

*George Cochran Doub*, with whom were *Zelig Robinson, John J. Ghingher, III*, and *Weinberg & Green* on the brief, for appellees R. G. Hobelmann & Co., Inc., Dockside Storage Company, Inc., and Rudolph G. Hobelmann.

SINGLEY, J., delivered the opinion of the Court.

Maryland Port Authority (the Authority) is a "body politic and corporate," established by the General Assem-

bly in 1956, Maryland Code, 1957 (1968 Repl. Vol.) Art. 62 B (the Act). Among the powers with which the Authority is vested by § 5 of the Act are the powers:

"(f) * * * To acquire, construct, reconstruct, rehabilitate, improve, maintain, lease as lessor or as lessee, repair and operate port facilities within its territorial jurisdiction, including the dredging of ship channels and turning basins and the filling and grading of land therefor, and to establish reasonable rules and regulations for the use of any project which are not inconsistent with the provisions of this article or any other applicable law of the State of Maryland;"
* * *
"(o) * * * To employ * * * managers, clerks, stenographers, laborers, and such other agents and employees as may be necessary in its judgment; * * *."

One of the Authority's most successful enterprises is the Dundalk Marine Terminal (the Terminal), where there is located a facility which appellant says was especially designed to handle the importation of foreign cars. At argument we were told that as a result of its favorable location and exceptional facilities, the car import facility had become the largest in the United States, handling more than 200,000 cars each year.

Baltimore Import Car Service and Storage, Inc., (Baltimore Imports), an importer of foreign cars, became convinced that as a consequence of certain leases and a series of exclusive contractual arrangements which commenced in 1960, the car import facility at the Terminal had become the private fief of R. G. Hobelmann & Co., Inc. (Hobelmann), also an importer of foreign cars, and Dockside Storage Company, Inc. (Dockside), alleged to be under common ownership with Hobelmann. In April of 1968, Baltimore Import filed a petition for declaratory relief in the Circuit Court of Baltimore City under the Uniform Declaratory Judgments Act, Code, Art. 31 A, against the

Authority, Hobelmann, Dockside, the executive director of the Authority, the deputy director of the Authority and the president and alleged controlling stockholder of Hobelmann and Dockside.

The bill prayed that the contractual arrangements between the Authority, Hobelmann and Dockside be declared void and against public policy; that the Authority be required to enter into negotiations looking toward a lease of a portion of the Terminal to Baltimore Import; that the Authority be required to employ persons having no interest in the Terminal facilities; and that Hobelmann and Dockside be required to remit to the Authority such monies as had been collected under the contractual arrangement and to account to Baltimore Import for such monies as had been collected from it. Hobelmann, Dockside and the president of those two companies demurred; the Authority and its director and deputy director moved to dismiss, alleging lack of jurisdiction. The chancellor (Joseph L. Carter, J.) entered an order which neither sustained the demurrer nor granted the motion to dismiss, but declared the agreement and leases which the Authority had entered into with Hobelmann and Dockside to be valid. From a judgment in favor of the defendants for costs, Baltimore Import has appealed.

In not ruling on the demurrer or the motion to dismiss, Judge Carter relied on our prior holdings that the granting of a demurrer is seldom appropriate in a declaratory action. As Judge (later Chief Judge) Prescott said for the Court in *Shapiro v. Bd. of County Comm'rs,* 219 Md. 298, 301-03, 149 A. 2d 396 (1959) :

> "In actions for declaratory judgments or decrees, as in actions generally, a demurrer admits all of the alleged facts that are well pleaded.
> * * *"
>
>           * * *
>
> "It should be borne in mind that a demurrer is rarely appropriate in a declaratory judgment action. Where a bill of complaint shows a subject matter that is within the contemplation of

the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree. [citation omitted]"

To the same effect is *Myers v. Chief of Baltimore County Fire Bureau,* 237 Md. 583, 590-91, 207 A. 2d 467 (1965) and cases cited there; 22 Am. Jur.2d *Declaratory Judgments* § 91 (1965) at 955.

In *Hunt v. Montgomery County,* 248 Md. 403, 237 A. 2d 35 (1968), where a bill for declaratory relief was heard on demurrer by agreement of the parties, and a declaratory decree was entered declaring the rights of the parties and entering judgment for the defendants without ruling on the demurrer, we noted that since there was no genuine dispute of fact and as the answer to the contentions turned solely on questions of law, the declaration entered by the court could be treated as a summary judgment under Rule 610 a.

The posture of the case before us is somewhat different from that of *Hunt.* The facts set forth in the petition allege a controversy justiciable under declaratory judgment procedure. Baltimore Import says, and we think quite rightly, that it need not allege *all* the facts on which it relies, but only such facts as may be necessary to support its prayer for relief. As we said in *Smith v. Shiebeck,* 180 Md. 412, 420, 24 A. 2d 795 (1942) :

"* * * The material facts essential to the com-

plainant's right to obtain relief should be alleged, but a general statement of the facts is sufficient. It is not necessary to state minutely all the circumstances which may conduce to prove the general charge, as these circumstances are properly matters of evidence which need not be recited to enable them to be admitted as proof [citing cases]. Even though every particular circumstance is not stated, the bill will be held sufficient if it states the complaint with reasonable certainty, clearness and accuracy so as to apprise the defendant of the nature of the claim brought against him."

See also Maryland Rule 370 a 2. Hobelmann's responsive pleading, although called a demurrer, sometimes sounds like an answer. For example, paragraph 9 says:

"In carrying out its responsibility in the performance of its governmental functions by 'developing existing facilities to provide quicker, cheaper and more effective handling of cargoes' * * * by executing the Agreement and Leases with Hobelmann, Inc. and Dockside, the Authority has necessarily determined as a matter of sound public policy that the Agreement and Leases were in the public interest and thus that there be a single contractor for the handling and servicing of imported automobiles at the Terminal. The Authority has also necessarily determined that terminal services are preferably performed with greater efficiency by a single contractor and that, if more than one contractor was engaged to render the same or overlapping terminal services within the limited available space at the Terminal there would ensue confusion, if not chaos. It must be necessarily assumed that the leasing of space to Hobelmann, Inc. and Dockside was done pursuant to official decisions of the Authority in the exercise of its

> public responsibility and the determination of the Authority that such lease arrangements were in the public interest. It must also necessarily be assumed that the Authority has declined to rent space to Petitioner in the Terminal or in its newly acquired tract of land adjoining the Terminal because the Authority has deemed that such a lease would not be in the public interest."

This can scarcely be read as an admission of well pleaded facts.

The gravamen of Baltimore Import's petition is that the Authority under an agreement of 1 January 1967, entitled "Agency Agreement between Maryland Port Authority and R. G. Hobelmann & Company, Inc.", had constituted Hobelmann its exclusive agent for the handling of foreign automobiles; that under its agreement with the Authority, Hobelmann, acting as agent for the Authority, receives 75¢ of a charge of $1.45 imposed by the Authority on each vehicle moving through the Terminal except privately owned cars for which it receives $5.00; that this amounts to more than $100,000 per year and compensates Hobelmann for performing purely ministerial duties which could be as well performed by employees of the Authority. The petition also alleges that the $1.45 charge entitles the importer to five days' storage of a car in a so-called "transit area"; and that after five days, an additional charge is imposed on the import agent by Hobelmann, who does not remit sums so collected to the Authority. Exhibits filed with the petition disclose that the Authority has leased some 15 acres of the Terminal to Hobelmann at a minimum annual rent of $30,000 and some six acres to Dockside at a net annual rent of $16,000, which Hobelmann and Dockside use for the storage of their own cars and of the cars imported by others, if removed from the transit area. The petition alleges that since the Authority refuses to lease parts of the Terminal to importers other than Hobelmann, other importers are forced to pay to Hobelmann charges for vehicles kept at

the Terminal for more than five days, amounts which bear no relation to the rent paid by Hobelmann to the Authority.

The case is not without difficulty. The lower court was confronted with a choice between two equally well founded principles of law: on the one hand, when an administrative agency is vested with discretion, and exercises it within the scope of its authority, the courts will not intervene and substitute their judgment for that of a legislative or administrative body. *Stacy v. Montgomery County,* 239 Md. 189, 194, 210 A. 2d 540 (1965); *Kaufman v. Taxicab Bureau,* 236 Md. 476, 204 A. 2d 521 (1964), *cert. den.* 382 U. S. 849, 86 S. Ct. 95, 15 L.Ed.2d 88 (1965); *Serio v. Mayor & C.C. of Baltimore,* 208 Md. 545, 551, 119 A. 2d 387 (1956); *Masson v. Reindollar,* 193 Md. 683, 688-89, 69 A. 2d 482 (1949); *Gianforte v. Bd. of License Comm'rs,* 190 Md. 492, 58 A. 2d 902 (1948). On the other hand, it is equally well settled that when the statute creating an agency makes no provision for judicial review of the agency's determination, courts will act where a decision is not supported by facts, or where an action is not within the scope of delegated authority, or is arbitrary, capricious or unreasonable. *Board of Education of Carroll County v. Allender,* 206 Md. 466, 112 A. 2d 455 (1955); *Heaps v. Cobb,* 185 Md. 372, 380, 45 A. 2d 73 (1945); *Hecht v. Crook,* 184 Md. 271, 280-81, 40 A. 2d 673 (1944). This is the modern view, as even Professor Davis reluctantly concedes, 4 Davis *Administrative Law Treatise* § 28.21 (1958) at 112; Berger, "Administrative Arbitrariness and Judicial Review," 65 Columbia L.Rev. 55 (1965); Jaffe, "The Right to Judicial Review," 71 Harv.L.Rev. 401, 769 (1958); and see also, Cohen, "Some Aspects of Maryland Administrative Law," 24 Md. L. Rev. 1, 35-38 (1964) and Oppenheimer, "Administrative Law in Maryland," 2 Md.L.Rev. 185, 208-10 (1938). Even when there is provision for review, the jurisdiction of the courts is not ousted when the agency acts in an illegal or unconstitutional manner. *Burns v. Mayor & C.C. of Midland,* 247 Md. 548, 554-55, 234 A.

2d 162 (1967) ; *Truitt v. Bd. of Public Works,* 243 Md. 375, 391, 221 A. 2d 370 (1966) ; *Richmark Realty Co. v. Whittlif,* 226 Md. 273, 173 A. 2d 196 (1961) ; *Schneider v. Pullen,* 198 Md. 64, 81 A. 2d 226 (1951).

We think that the court below made the wrong choice. We do not mean to be understood as holding that the Authority acted arbitrarily, capriciously or unreasonably in its contractual relations with Hobelmann and Dockside. What we are saying is that the facts alleged in Baltimore Import's petition, if supported by competent evidence, and not justified by the Authority, might well establish a course of conduct so repugnant to fair dealing as to entitle the petitioner to relief. The Authority's unexplained refusal to lease to Baltimore Import may well involve the denial of equal protection guaranteed by the Fourteenth Amendment, which is binding on State agencies, *Pennsylvania v. Bd. of Directors of City Trusts,* 353 U. S. 230, 77 S. Ct. 806, 1 L.Ed.2d 792, *reh. den.* 353 U. S. 989, 77 S. Ct. 1281, 1 L.Ed.2d 1146 (1957).

As Baltimore Import points out, the simple fact is that Hobelmann receives each year from the Authority for performing routine services more than twice the amount Hobelmann and Dockside pay the Authority in rent.[1] There may be a reasonable explanation of this, but if it can be deduced from Hobelmann's demurrer, it escapes

---

1. The duties imposed on Hobelmann by the 1967 agency agreement are the following:

"(a) Tender the vessel a receipt for the vehicles at the end of ship's tackle, said receipt to cover count only subject to final inspection within the free time period.

(b) Establish condition of the vehicle, both as to damage and verification of parts and equipment, in company with the duly appointed surveyor.

(c) Deliver vehicles and secure proper receipt for same from the land carrier when shipped from the Terminal during the free time period.

(d) Supervise the vehicles in movement from end of ship's tackle to, and placement at, point of rest for duration of free time period.

(e) At the expiration of free time, remove the vehicles to be stored from the point of rest in the free time area to its leased area with all charges for this service to be assessed against the vehicle.

(f) Issue to the Authority a proper receipt for ve-

us. We are mindful of the result reached in *The Broadway & Locust Point Ferry Co. v. Hankey,* 31 Md. 346 (1869), on which Hobelmann relies, which held unobjectionable a grant of an exclusive right to use the end of a public wharf, largely because of the benefit to the public. It is not so much the exclusivity, but the somewhat unusual economics of the arrangement between the Authority and Hobelmann which may well merit examination.

Baltimore Import makes much of the fact that Hobelmann, which was constituted an agent of the Authority by the agency agreement of 1 January 1967, violated Maryland's conflict of interest statute, Code, Art. 19 A, when it contracted with the Authority for the lease of space at the Terminal. Art. 19 A § 1 (as it read until 1969) provided:

> "* * * It shall be unlawful for any member, agent, or employee * * * to have any direct financial interest in any transaction in which such agency is or may be in any way concerned * * *."

The chancellor accepted the Authority's argument as regards this charge, and found Art. 19 A inapplicable for four reasons:

> (i) The 1967 agreement made Hobelmann an independent contractor and not the Authority's agent, because the Authority reserved no right to control Hobelmann in the performance of its duties;

---

hicles removed to the storage area with all exceptions noted.

(g) Submit to the Authority in writing, upon request, all rules, charges and assessments covering its operations in the lease area.

(h) Keep and make available to the Authority, upon request, record of all transactions, including but not limited to vessel receipts, survey reports and storage transactions.

(i) Remove to leased area store, deliver and service all privately-owned vehicles in accordance with tariff."

Baltimore Import says this work could be done by two clerks.

 

(ii) since Hobelmann was an independent contractor and not an agent, there was no prohibition against its dealing with the Authority;

(iii) even if Hobelmann were an agent, a conflict of interest statute is intended to prevent an agent from using his position to cause a public body to enter into a transaction from which the agent will profit and there was no allegation that Hobelmann as agent had a voice in the decision of the Authority to enter into the leases.

(iv) Art. 19 A § 5 makes it clear that transactions which contravene the statutory prohibitions may be set aside only in an action brought by the Attorney General in behalf of the State and here the Attorney General is defending the validity of the contract and leases in behalf of the Authority.

Assuming, without deciding, that this conclusion is correct, the clear expression of legislative intent found in Art. 19 A adds substance to Baltimore Import's contention that a declaration adverse to it should not have been entered without giving it an opportunity to put on its case.[2] We reach no conclusion as to the relief to which it may be entitled or even as to whether it is entitled to any relief at all, nor could we do so on the record before us. We do conclude, however, that if we accept as true the facts alleged in the petition as we must, a declaration entered on the pleadings that the agreement and the leases were valid was not warranted as a matter of law.

> *Order reversed, case remanded for further proceedings conformable with this opinion, costs to abide the result.*

---

2. It is interesting to note that § 21 (a) of the Act creating the Authority imposed criminal penalties on "any member, agent or employee of the Authority who contracts with the Authority or is interested, either directly or indirectly, in any contract with the Authority* * *." The Chancellor found that § 21 (a) had been repealed by § 2 of Art. 19 A.