## ZION EVANGELICAL LUTHERAN CHURCH OF THE UNITED CHURCH OF CHRIST OF STEMMERS RUN, MARYLAND ET AL. *v.* STATE HIGHWAY ADMINISTRATION ET AL.

[No. 96, September Term, 1975.]

*Decided January 8, 1976.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges and Levine, JJ.

*Wilson K. Barnes,* with whom was *A. Raymond Bevans, Jr.,* on the brief, for appellants.

*John J. Schuchman, Special Attorney,* with whom were *Francis B. Burch, Attorney General, J. Michael Mc Williams, Assistant Attorney General,* and *Nolan H. Rogers, Special Assistant Attorney General,* on the brief, for appellees.

Singley, J., delivered the opinion of the Court.

The appellants, Zion Evangelical Lutheran Church (the Church); Henry Betz; Edward and Amelia Betz; John and Lavinia Betz, and Clarence McNeal (hereinafter collectively referred to as the property owners), all own property in the 7100 and 7200 blocks of Golden Ring Road, located in the eastern part of Baltimore County. Feeling aggrieved by the action of the State Highway Administration (SHA)[1] in recently extending the Baltimore County Beltway and Windlass and Southeast Freeways, the property owners filed a bill of complaint in the Circuit Court for Baltimore County on 12 June 1975, seeking temporary and permanent injunctions against SHA. Also joined as defendants were the Department of Transportation (the Department), of which the SHA is a part; Harry R. Hughes, Secretary of the Department; and Bernard M. Evans, administrator of SHA. The defendants demurred to the bill of complaint, as amended, and following a hearing in the Circuit Court for Baltimore County, the demurrer was sustained on 23 June

---

[1]. SHA's basic function is "to do all that is necessary for the planning, selection, construction, improvement and maintenance of the State highway system." Maryland Code (1957, 1969 Repl. Vol., 1975 Cum. Supp.), Art. 89B, § 7 (a).

1975 without leave to amend. The property owners appealed to the Court of Special Appeals, and we granted certiorari before argument was heard in that Court.

As this is an appeal from the sustaining of a demurrer, we are bound, as was the chancellor, to assume as true all well-pleaded facts in the bill of complaint and attached exhibits together with any reasonable inferences which may be drawn from those facts, *Citizens Planning & Housing Ass'n v. Baltimore County*, 273 Md. 333, 337-38, 329 A. 2d 681, 683-84 (1974) and cases there cited.

Prior to the construction of the Baltimore County Beltway, Golden Ring Road was an east-west thoroughfare connecting the Essex and Rosedale sections of Baltimore County. The property owners' properties are located along the north side of Golden Ring Road just west of its intersection with the newly constructed Kelso Avenue, at or near the area marked with a cross.[2] The property owners' bill of complaint describes this area as a "major flood plain" of Stemmers Run, with the result that Golden Ring Road is "regularly under water" and impassable to vehicular traffic at the points where Golden Ring and Race Roads span Stemmers Run by bridges, to the east of the properties in question. Thus, whenever the bridges become impassable, the only access to or egress from these properties would be from or to the west. It is the interference with this access and egress which is the gravamen of the property owners' complaint.

The bill of complaint alleges that when the Beltway was originally constructed, Golden Ring Road was dead-ended at Pulaski Highway, a few miles to the west of appellants' properties, thus rendering it no longer possible to travel from the properties through to Pulaski Highway. At this point in time, however, Golden Ring Road became an extension of the Beltway, providing access to the properties from the west.

---

**2.** Filed as an appendix to this opinion is a copy of a segment of a map of Baltimore County, reproduced by permission from "Baltimore and Baltimore County Street Map," published by Alexandria Drafting Company (1975) which the Reporter is directed to copy.

More recently, SHA undertook to extend the Beltway by constructing the Southeast Freeway and, in so doing, discontinued the use of Golden Ring Road as an extension of the Beltway. Through acquisition and condemnation, SHA constructed Kelso Avenue and connected it by ingress and egress ramps to the Beltway. These ramps, therefore, provided ingress and egress for the properties from and to the west, because Kelso Avenue connected with Golden Ring Road at a point just east of the property owned by the Church. A portion of the land upon which Kelso Avenue now lies was acquired from the Church and Henry Betz. The bill of complaint alleges that SHA assured Betz that "the same or equivalent access" would continue to be provided because SHA was aware of the "regular" flooding condition further to the east.

The act by the SHA which is complained of occurred recently when Windlass and Southeast Freeways were interconnected with the Beltway less than a mile to the southeast of the Kelso Avenue ramps. SHA removed the egress ramp and closed the ingress ramp to vehicular traffic, thereby effectively eliminating access to the property owners' properties from the west and egress from the properties to the Beltway.[3] The bill of complaint alleges that as a result, whenever Stemmers Run overflows, and the Golden Ring Road and Race Road bridges become impassable, all access to the properties is cut off, a condition which is alleged to occur "regularly."

The thrust of the bill of complaint is essentially two-fold: first, it alleges facts which would warrant a conclusion that SHA, the Department, Hughes and Evans acted arbitrarily and capriciously; and second, it alleges that the closing of the Kelso Avenue ramps constitutes a taking of the property owners' properties without just compensation in direct contravention of the due process clause of the fourteenth

---

**3.** The property owners seek an injunction to prevent SHA from removing the ingress ramp and to provide "an adequate means of ingress and egress to its property," but not specifically to require the reconstruction of the egress ramp from the Beltway to Kelso Avenue.

amendment to the Constitution of the United States and Article III, § 40 of the Maryland Constitution.

We regard this first allegation that the appellees acted arbitrarily and capriciously, which, in the circumstances of this case, must be taken as true for purposes of the demurrer, as dispositive of the case at this time. The property owners allege that they were assured at all stages of the construction of the Beltway that their access to the west would not be cut off, because SHA was well aware of the frequent flooding problem. By disregarding these assurances, the defendants are alleged to have acted arbitrarily and capriciously despite the wide discretion given them to plan and construct controlled access arterial highways, expressways, parkways or freeways which may, on occasion, deny abutting owners of ingress and egress rights. See Maryland Code (1957, 1969 Repl. Vol., 1975 Cum. Supp.), Art. 89B, §§ 7 (a), 213, 214. Such arbitrary and capricious action, the property owners say, amounts to a constructive fraud causing them irreparable injury.

In sustaining the demurrer, the chancellor, in essence, ruled that the bill of complaint failed to state a cause of action in equity. What we must decide, therefore, is whether the property owners have indeed failed to present well-pleaded facts which, when assumed to be true for purposes of the demurrer, state a cause of action. See e.g., Baltimore Import Car Service & Storage, Inc. v. Maryland Port Authority, 258 Md. 335, 338-39, 265 A. 2d 866, 868-69 (1970); Walker v. D'Alesandro, 212 Md. 163, 167, 129 A. 2d 148, 150 (1957). The defendants, by way of demurrer, may not introduce additional facts for the court's consideration, Nohowel v. Hall, 218 Md. 160, 164, 146 A. 2d 187, 189 (1958). We believe that the bill of complaint made out a cause of action for equitable relief at least insofar as it alleged arbitrary and capricious action on the part of the appellees.

In Criminal Injuries Compensation Board v. Gould, 273 Md. 486. 500-08, 331 A. 2d 55, 64-69 (1975), we reviewed a myriad of cases which hold that "the Legislature cannot divest the courts of the inherent power they possess to review and correct actions by an administrative agency

which are arbitrary, illegal, capricious or unreasonable." 273 Md. at 501, 331 A. 2d at 65. *See also Baltimore Import Car Service & Storage, Inc., supra,* 258 Md. at 342, 265 A. 2d at 869-70; *State Dept. of Health v. Walker,* 238 Md. 512, 522-23, 209 A. 2d 555, 561 (1965); *Heaps v. Cobb,* 185 Md. 372, 379, 45 A. 2d 73, 76 (1945), and *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673, 677 (1945).

The property owners' allegation that the action of the appellees in closing the Kelso Avenue ramp was arbitrary and capricious, being contrary to an assurance given one of the property owners, "regularly" denied the property owners access to their properties. While the chancellor, in his oral opinion, characterized the flooding condition of Stemmers Run as "temporary" resulting from "the visitation of God," this was at variance with the facts alleged. It seems to us that the chancellor departed from the facts pleaded in the bill, which must be accepted as true.

It seems clear to us that the property owners stated a cause of action under the holding in *Gould, supra,* and are entitled to a judicial determination of the question whether such administrative action was arbitrary and capricious. Of course, the property owners will be required to prove that the assurances were made, that SHA reneged on its assurances, and that the property owners, as a result, were "regularly" denied all access to their properties.

SHA suggests that its decision to close the Kelso Avenue ramps, being part of the overall plan for the Beltway, is not judicially reviewable because it is a decision lying within the sound discretion of SHA under the powers delegated to it by Code, Art. 89B, § 7 (a). While it is true that ordinarily a decision by SHA to construct a highway in one location rather than in another is not reviewable by the courts, absent evidence of injury to a specific person, *Murphy v. State Roads Comm'n,* 159 Md. 7, 13-14, 149 A. 566, 570 (1930), it has frequently been held that an allegedly arbitrary, capricious or illegal decision by an administrative agency will be judicially reviewed even where no right of review is granted by statute. This is precisely the holding of *Criminal Injuries Compensation Board v. Gould, supra,* 273

Md. 486, 500-08, 331 A. 2d 55, 64-69, and *Murphy v. State Roads Comm'n, supra,* is not to the contrary.

> *Order reversed; case remanded for further proceedings; costs to be paid by appellees.*

## APPENDIX